# EXHIBIT A

## RICHARDS DECLARATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KLCG PROPERTY, LLC, and<br>GURNEE PROPERTY, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 09-14418 (KJC)<br><br>(Jointly Administered) |

### DECLARATION OF GEOFFREY A. RICHARDS IN SUPPORT OF DEBTORS' APPLICATION FOR ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION AND EMPLOYMENT OF WILLIAM BLAIR & COMPANY, L.L.C. AS INVESTMENT BANKER

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Geoffrey A. Richards declares and says:

1. I am the Head of Special Situations and Restructuring for William Blair & Company, L.L.C. ("Blair"), at 222 West Adams Street, Chicago, IL 60606. I am duly authorized to make this affidavit (the "Affidavit") on behalf of Blair. I submit this Affidavit in accordance with sections 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 2014 in connection with the application (the "Application") of the above captioned debtors and debtors in possession (collectively the "Debtors") for an order pursuant to sections 327 and 328 of the Bankruptcy Code and Bankruptcy Rule 2014 authorizing the Debtors to retain and employ Blair as their investment bankers.

2. The facts set forth in this Affidavit are personally known to me and, if called as a witness, I could and would testify thereto. Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

---

[1] The last four digits of Debtors' federal tax identification numbers are: KLCG Property LLC (0521) and Gurnee Property, LLC (1995). The Debtors' address is 1700 Nations Drive, Gurnee, Illinois 60031.

## QUALIFICATIONS OF PROFESSIONALS

3. The Debtors have selected Blair based on its experience and expertise in providing investment banking services in chapter 11 cases throughout the country, and based on William Blair's familiarity with the Debtors' business.

4. Blair has substantial expertise in advising troubled companies in connection with asset sales and related issues, and William Blair is particularly well suited to serve as the Debtors' investment banker in these chapter 11 cases. Blair is a global investment and advisory firm with expertise in mergers and acquisitions, capital raising, restructurings and other strategic advisory services. While at Blair and previous professional services firms, Blair's professionals have developed extensive experience in matters involving complex financial restructurings and its bankers have been involved as investment banker and/or advisor to a diverse group of debtors, creditors, and bondholders in the chapter 11 cases of many companies, including, among numerous others, Robbins Bros. Corporation, SCH Corp., Hartmarx Corporation, Renew Energy LLC, Waterworks Holding Corp., American IronHorse Motorcycles, Inc., Ameriserve Food Distribution, Inc., Calpine Corporation, CoServ, Diamond Brands, Inc., Diamond Glass Companies, Inc., Gateway Ethanol, Inc., Harnischfeger Industries, Inc., Stations Holding Company, Inc. and UAL Corporation.

5. Geoffrey A. Richards, Head of Blair's Special Situations and Restructuring Group, will lead all of the day-to-day aspects of this assignment. Mr. Richards has extensive complex transaction experience in a comprehensive range of restructuring and distressed mergers and acquisition engagements, both inside and outside chapter 11. Mr. Richards has advised public and private companies, private equity sponsors, hedge funds, purchasers of distressed assets and businesses, key secured and unsecured creditors, debtor-in-possession lenders, and creditors' committees. Mr. Richards was previously a managing director

at Giuliani Capital Advisors LLC and, before that, a partner in the Kirkland & Ellis LLP restructuring practice. Since 2001, Mr. Richards has taught corporate restructuring as an adjunct professor at Northwestern University School of Law.

## SERVICES TO BE PROVIDED

6. Blair has entered into an engagement agreement with the Debtors dated December 23, 2009 (the "Engagement Agreement"). If approved by the Court, Blair will provide investment banking services as requested by the Debtors and as described in the Engagement Agreement. The Engagement Agreement calls for Blair to provide the following investment banking services:

   a) assist the Debtors' management in (i) developing a strategy for pursuing one or more Possible Transactions, (ii) preparing a descriptive memorandum that describes the Debtors' operations and financial condition and includes current financial data and other appropriate information furnished by the Debtors (as amended and supplemented from time to time, the "Descriptive Memorandum") and (iii) contacting and eliciting interest from those possible participants expressly approved by the Debtors and a list of possible participants in the Possible Transactions (it being understood that such participants may include parties to whom William Blair has rendered or is now rendering investment banking services but, in any case, such services have not and do not in any way relate to the Debtors or any Possible Transactions);

   b) assist the Debtors and its other professionals in reviewing and analyzing the terms of any proposed Possible Transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Possible Transaction, whether in connection with a confirmed chapter 11 plan (a "Plan") or otherwise;

   c) determine a range of values for the Debtors and any securities that the Debtors offers or proposes to offer in connection with a Possible Transaction;

   d) advise the Debtors on the risks and benefits of considering a Possible Transaction with respect to the Debtors' business prospects and strategic alternatives to maximize the business enterprise value of the Debtors, whether pursuant to a Plan or otherwise;

e) assist or participate in negotiations with parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Debtors and/or their respective representatives in connection with a Possible Transaction and/or a Plan;

f) advise and attend meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

g) to the extent requested by the Debtors, assist the Debtors in raising capital and/or refinancing or amending any of its existing debt facilities;

h) participate in hearings before the Court and provide relevant testimony with respect to the matters described herein and arising in connection with any Possible Transaction or any proposed Plan; and

i) render such other financial advisory and investment banking services as may be agreed upon in writing by Blair and the Debtors in connection with any of the foregoing.

7. The Debtors have indicated that the services that Blair will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates for the benefit of creditors. The Debtors also have indicated that they will coordinate with Blair and the Debtors' other retained professionals to ensure that the foregoing services do not duplicate the services rendered by such other professionals.

## DISINTERESTEDNESS

8. In preparing this Affidavit, I caused to be reviewed the names of significant parties in interest provided to Blair by the Debtors (collectively, the "Interested Parties"). The Interested Parties are comprised of the following categories of entities: (a) the Debtors and their affiliates, (b) the Debtors' members, (c) the secured creditors (other than judgment lienholders or parties who filed UCCs in states other than the State of Delaware) (d) the 30 largest unsecured creditors on a consolidated basis, (e) the Debtors' pre- and post-petition lenders, (f) any professionals to be retained by the Debtors in these chapter 11 cases, and (g) other significant parties-in-interest.

9. To the extent that Blair's research of its relationships with the Interested Parties indicated that Blair has been or currently is employed by any of these entities in matters unrelated to these chapter 11 cases, the identities of these entities are set forth on Schedule 1 hereto.

10. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, other than in connection with these chapter 11 cases, neither I, nor Blair, nor any of its principals, employees, agents or affiliates, have any connection with the Debtor, its creditors, the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, except as set forth below or on Schedule 1 hereto:

  a) Blair has not been employed by any entity other than the Debtors in matters related to these chapter 11 cases.

  b) Blair provides services in connection with numerous cases, proceedings and transactions unrelated to these chapter 11 cases. These unrelated matters involve numerous attorneys, financial advisors and creditors, some of which may be claimants or parties with actual or potential interests in this case or may represent such parties.

  c) Blair's personnel may have business associations with certain creditors of the Debtors unrelated to these chapter 11 cases. In addition, in the ordinary course of its business, Blair may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other interested parties in these cases.

11. Despite the efforts described above to identify and disclose Blair's connections with parties in interest in this case, because the Debtors are large enterprises with hundreds of creditors and other relationships, Blair is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Blair discovers

additional information that requires disclosure, Blair will file a supplemental disclosure with the Court.

12. Insofar as I have been able to determine, Blair and the employees of Blair that will work on this engagement do not hold or represent any interest adverse to the Debtors or their estates. Accordingly, Blair believes that it is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code in that Blair, its professionals and employees:

    a. Are not creditors, equity security holders or insiders of the Debtors;

    b. Are not and were not, within two (2) years before the date of the filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

    c. Does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor.

13. I am not related or connected to and, to the best of my knowledge, no other professional of Blair who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for the District of Delaware who handle bankruptcy cases, the United States Trustee for Region Three or any employee in the Office of the United States Trustee for Region Three.

14. If Blair discovers any additional information that requires disclosure, Blair will promptly file a supplemental affidavit with this Court.

15. Based on the foregoing, I submit that Blair is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

## PROPOSED COMPENSATION

16. The Debtors have agreed in the Engagement Agreement of the following fee structure (the "Fee Structure"):

   a) <u>Monthly Fees</u>. In consideration of the foregoing financial advisory services, the Debtors shall pay Blair the following non-refundable fees which shall be due, fully earned and payable on the following dates: $50,000 upon the date of the Engagement Agreement and $50,000 due, fully earned and payable in advance every thirty days after the date of this Agreement. After Blair has received 3 (three) monthly fees, 100% of the monthly fees received by Blair thereafter shall be credited against the Transaction Fees.

   b) <u>M&A Transaction</u>. Upon the consummation of any M&A Transaction, the Debtors shall pay Blair a cash fee (the "<u>M&A Fee</u>") equal to:

      (1) $475,000 (the "<u>Minimum Fee</u>") for an M&A Transaction pursuant to which the Debtors' existing senior secured lenders acquire the Debtors' OPERATING assets in an auction process that does not produce bids from third parties;

      (2) $700,000 for an M&A Transaction pursuant to which (a) the Debtors' existing senior secured lenders acquire the Debtors' OPERATING assets as a result of an auction process that does produce bids from third parties or (b) the Debtors' OPERATING assets are acquired by a purchaser other than the Debtors' senior secured lenders; and

         i. 3% of any Transaction Value in excess of $90,000,000.

   c) <u>Financing Transaction</u>. Upon the consummation of a Financing Transaction, the Debtors shall pay Blair a cash fee (the "<u>Financing Fee</u>") equal to (x) 1.0% of the aggregate principal amount of all secured notes and bank debt raised or committed, (y) 3.0% of the aggregate amount of all unsecured and subordinated debt securities raised or committed, whether structurally or contractually subordinated and whether with the same or different lender(s) or (z) 6.0% of the aggregate amount of all equity and equity equivalents (including convertible securities and preferred stock) placed or committed.

   d) <u>Restructuring Transaction</u>. Upon the consummation of any Restructuring Transaction, the Company shall pay to Blair a cash fee (the "<u>Restructuring Fee</u>") equal to $700,000.

Any Financing Fee, M&A Fee and any Restructuring Fee are each referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees".

Certain Transactions Fees shall be paid to Blair by withholding such fee from the proceeds from the issuance of any debt or equity securities (in the case of a Financing Transaction) or from the sale proceeds (in the case of a M&A Transaction) by instructing the purchasers of the securities or the payor(s) of the Transaction Value, as the case may be, to wire transfer the Transaction Fee directly to Blair upon the consummation of the Possible Transaction.

17. Blair does not charge for fees on an hourly basis. The fees and expense reimbursement provisions described above are consistent with normal and customary billing practices for cases of this size and complexity which require the level and scope of services outlined.

18. I respectfully submit that this fee arrangement, which is similar to fee arrangements which have been authorized in other chapter 11 cases in which Blair and other leading investment bankers have rendered services, is reasonable in light of industry practice, market rates both in and out of chapter 11 proceedings, Blair's experience, and the scope of work to be performed pursuant to Blair's retention.

19. Although Blair does not charge for its services on an hourly basis, Blair will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these cases including a summary time records of time spent by their professionals in connection with rendering of services for the Debtors.

20. Blair will seek compensation and reimbursement of expenses, as specified in the Engagement Agreement as modified by the Application, with the payment of such fees and expenses to be approved in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of this Court and pursuant to any additional procedures that may be established by the Court in these cases.

21. Blair does not have any agreement with any other entity to share compensation received by Blair in connection with this engagement, except as permitted by section 504 of the Bankruptcy Code.

## INDEMNIFICATION

22. As more fully described in Attachment A of the Engagement Agreement (the "Indemnification Provision"), the Debtors have also agreed to indemnify, defend and hold harmless Blair and its affiliates, the respective partners, directors, officers, agents and employees of Blair and its affiliates and each other person, if any, controlling Blair or its affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject or which are asserted against any Indemnified Party, directly or indirectly, in any way related to Blair's acting for the Debtors in connection with (i) any act or omission by Blair related to its engagement as financial advisor under the Engagement Agreement or (ii) Blair's acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement, except to the extend that any losses, claims, damages, liabilities or costs resulting from Blair's acts, omissions, acceptance, performance or non-performance specified above, is found to be the product of Blair's gross negligence or willful misconduct.

23. Although not provided for in the Indemnification Provision, Blair agrees that if before (i) the entry of an order confirming a chapter 11 plan in the Debtors' cases (that order having become a final order, no longer subject to appeal), (ii) for a contractual dispute in which the Debtors allege breach of Blair's obligations under the Engagement Agreement, or (iii) the entry of an order closing the Debtors' chapter 11 cases, Blair believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution

and/or reimbursement obligations under the Indemnification Provision, including, without limitation, the advancement of defense costs, Blair will file an application for such payment with the Court.

24. The Indemnification Provision is typical of the indemnification provisions contained in the engagement agreements of other investment bankers retained in this District. The qualifications and limits on the indemnification provisions that are customary in this District have been incorporated in the proposed order submitted to the Court.

I certify under penalty of perjury that, based upon my knowledge, information and belief as set forth in this Affidavit, the foregoing is true and correct.

Dated this 24th day of December, 2009.

                                              /s/ Geoffrey A. Richards
                                             Geoffrey A. Richards
                                             Head of Special Situations and Restructuring
                                             William Blair & Company, L.L.C.

# Schedule 1

| Party in Interest | Nature of Connection |
|---|---|
| Dougherty Funding | 1. Dougherty Funding was the senior secured lender and purchaser of Gateway Ethanol, L.L.C. William Blair served as the investment banker and financial advisor to Gateway Ethanol, L.L.C.<br><br>2. Dougherty Funding was a lender to an indirect affiliate of Renew Energy LLC (through ownership by certain of Renew Energy LLC's shareholders). William Blair served as the financial advisor and investment banker to Renew Energy LLC. |