# EXHIBIT A

**Revised Bidding Procedures Order**

DB02:9233888.1     068913.1001

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KLCG PROPERTY, LLC, and<br>GURNEE PROPERTY, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 09-14418 (KJC)<br><br>(Jointly Administered)<br><br>Ref. Docket No.: 92 |

**ORDER, PURSUANT TO 11 U.S.C. §§ 105(A), 363, 365, 503, AND 507 AND FEDERAL BANKRUPTCY RULES 2002, 6004, 6006, AND 9014: (A)(I) ESTABLISHING BIDDING AND AUCTION PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) APPROVING BID PROTECTIONS FOR THE STALKING HORSE BIDDER; (III) PERMITTING CREDIT BIDDING PURSUANT TO BANKRUPTCY CODE SECTION 363(k); (IV) SCHEDULING AN AUCTION AND SALE HEARING FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; AND (V) APPROVING NOTICE OF PROCEDURES FOR THE SOLICITATION OF BIDS, AN AUCTION AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; AND (VI) GRANTING RELATED RELIEF**

Upon the Motion (the "Motion")[2] of the above-captioned Debtors and Debtors In Possession (the "Debtors"), pursuant to sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, *inter alia*, (a) establishing bidding and auction procedures for the sale of all or substantially all of the Debtors' assets; (b) approving bid protections for the stalking horse bidder; (c) permitting credit bidding pursuant to Bankruptcy Code section 363(k); (d) scheduling an auction and sale hearing for the sale of all or substantially all of the Debtors' assets; (e) approving notice of procedures for the solicitation of bids, an auction and the assumption and assignment of executory contracts

---

[1] The last four digits of Debtors' federal tax identification numbers are: KLCG Property LLC (0521) and Gurnee Property, LLC (1995). The Debtors' address is 1700 Nations Drive, Gurnee, Illinois 60031.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the Purchase Agreement, as applicable.

and unexpired leases, including notice of proposed cure amounts; and (f) granting related relief [Dkt. No. 92]; and the Court having found that this matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O); and no other or further notice hereof being necessary or required; and the Court having found that the Debtors have articulated good and sufficient reasons in support of the relief requested in the Motion regarding the sale process, including without limitation, (i) approval of the Bidding Procedures and Bidding Protections, and (ii) approval and authorization to serve the Notice of Auction and Sale Hearing and the Cure Amount Notice (each as defined below); and it appearing to the Court that based upon the representations contained in the Motion, the issuance of this Order is in the best interest of the Debtors, their estates and creditors, and after due deliberation and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein. Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these Chapter 11 cases.

2. The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby authorized, approved and made part of this Order as if fully set forth herein. The Debtors are authorized to conduct a sale by auction (the "Auction") of all or substantially all of the Debtors' assets (the "Assets"), including without limitation the assets (hereafter, the "Purchased Assets") subject to the Purchase Agreement, pursuant to the Bidding Procedures and the terms of this Order.

3. All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as they pertain to the relief granted by entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

4. The Bidding Procedures are reasonable and appropriate and consistent with maximizing value for the benefit of the Debtors' estates.

5. The Debtors are authorized and empowered to take such steps, expend such sums of money, and do such other things as may be reasonable or necessary to implement and effect the terms of this Order and the Bidding Procedures.

6. The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

7. The Debtors shall, promptly upon receipt, provide to the Committee copies of (i) any and all documents received by the Debtors from Potential Bidders seeking to become Qualified Bidders as contemplated in section II of the Bidding Procedures and (ii) any and all Initial Bids received by the Debtors.

8. Subject to the final determination of this Court, the Debtors are authorized after consultation with Dougherty Funding LLC in its separate capacities as DIP Lender and Prepetition Senior Lender and the official committee of unsecured creditors as appointed by the Office of the United States Trustee on or about January 7, 2010 (the "Committee") and in accordance with the Bidding Procedures, to (a) determine which of the Initial Bids submitted prior to the Auction and the bids made at the Auction constitute the highest or otherwise best offer(s) at each stage of these procedures, and (b) properly reject any and all Initial Bids or bids at the Auction that are (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, or the terms and conditions of the Sale, or the terms of this Order and the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their estates and creditors.

9.  As further described in the Bidding Procedures, in the event that the Debtors receive one or more Qualifying Bids, the Debtors shall conduct the Auction on **March 16, 2010 at 10:00 a. m. (Eastern Time)** (the "Auction Date") at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, or at such other time and place as the Debtors determine in the exercise of their reasonable discretion, upon notice to interested parties. Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale. The Auction shall be conducted openly and any creditor shall be permitted to attend, so long as such creditor provides written notice of its plan to attend to counsel for the Debtors at least two business days prior to the Auction so that appropriate arrangements can be made. The bidding at any Auction will be transcribed by a court reporter.

10.  On **March 22, 2010 at 10:00 a.m. (Eastern Time)** or as soon thereafter as counsel may be heard, the Sale Hearing will be held before the Honorable Kevin J. Carey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Wilmington, DE 19801, to consider the issuance and entry of an order, *inter alia*, approving the sale(s) of all or substantially all of the Assets free and clear of all liens, claims, encumbrances, and interests (collectively, the "Liens") except as provided in the Purchase Agreement, with the same to attach to the sale proceeds that exceed the "Purchase Price" (as defined in the Purchase Agreement) in the same order of priority, and to the same extent as such Liens were valid, perfected and enforceable prior to such sale. The Debtors may adjourn the Sale Hearing one or more times without further notice by making an announcement in open Court or by the filing of a hearing agenda announcing the adjournment.

11. The Auction and Sale Notice substantially in the same form as annexed to the Motion as <u>Exhibit C</u>, the Cure Amount Notice substantially in the same form as annexed to the Motion as <u>Exhibit D</u>, the Post Auction Notice substantially in the same form as annexed to the Motion as <u>Exhibit F</u> and the Post-Closing Assumed Contract Notice substantially in the same form as annexed to the Motion as <u>Exhibit G</u> are sufficient to provide effective notice to all interested parties of the entry of this Order, the Bidding Procedures, the Auction, the Sale and the proposed assumption and assignment of executory contracts and unexpired leases pursuant to Bankruptcy Rules 2002(a)(2), 6004, 6006, and 9014, and are hereby approved.

12. Nothing is this Bidding Procedures Order or the Bidding Procedures shall preclude the Stalking Horse Bidder from exercising it rights under Bankruptcy Code Section 363(k) to make a credit bid at the Auction to the extent permitted by Bankruptcy Code Section 363(k).

13. Not later than three (3) business days after entry of this Order, the Debtors will cause the Auction and Sale Notice to be sent by first-class mail, postage-prepaid, to (a) all entities that are know to have asserted any claim, interest, lien or encumbrance on the Assets; (b) non-Debtor parties to executory contracts and unexpired leases subject to the proposed Sale; (c) all governmental taxing authorities that have, or as a result of the sale of the Assets may have, claims, contingent or otherwise, against the Debtors; (d) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (e) all known creditors (whether liquidated, contingent or unmatured) of the Debtors; (f) all interested governmental, pension, and environmental entities; (g) the Office of the United States Trustee; (h) counsel to the DIP Lender and the Prepetition Senior Lender, (i) counsel to the Committee, (j) all entities that have, within the past 6 months, expressed to the Debtors an interest in purchasing the

Assets or to have executed confidentiality agreements in connection therewith; and (k) parties who have requested service pursuant to Bankruptcy Rule 2002 (collectively, the "Service Parties").

14. As soon as practicable after entry of this Order, the Debtors shall serve the Cure Amount Notice by first class mail, postage prepaid, or hand delivery.

15. All objections to the relief requested in the Motion in connection with the actual sale of the Debtors' Assets (other than any objection to the assumption or assignment of any executory contract or unexpired lease or the proposed Cure Amount with respect thereto that is subject to the "Assigned Contract Objection Procedures" (as defined below)) must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) filed with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, DE 19801 on or **before March 11, 2010 at 4:00 p.m. (Eastern Time)** (the "Sale Objection Deadline"); and (d) served so as to be received on or before the Sale Objection Deadline by:

(a) the Debtors, 1700 Nations Drive, Gurnee, Illinois 60031, Attn: Steve A. Nerger, CRO;

(b) counsel to the Debtors, von Briesen and Roper, S.C., 3 South Pinckney Street, Suite 1000, Madison, Wisconsin 53703-4200, Attn: Claire Ann Resop (cresop@vonbriesen.com) and Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Fl., Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com);

(c) the investment bankers for the Debtors, William Blair & Company L.L.C., 222 West Adams Street, Chicago, Illinois 60606, Attn: Geoffrey Richards (grichards@williamblair.com);

(d) counsel to the Stalking Horse Bidder, Fabyanske, Westra, Hart & Thomson, P.A., 800 LaSalle Avenue Suite 1900, Minneapolis, Minnesota, 55402 Attn: Mark W. Westra (mwestra@fwhtlaw.com) and Paul Ratelle (pratelle_@fwhtlaw.com); and

(e) the Office of the United States Trustee, 844 North King Street, Suite 2207, Wilmington, DE 19801, Attn: Patrick Tinker (fax (302) 573-6497) (collectively, the "Notice Parties").

The foregoing requirements are collectively referred to herein as the "General Objection Procedures." Only those objections made in compliance with the General Objection Procedures will be considered by the Court at the hearing on this Motion. The failure of any objecting person or entity to file its objections by the Sale Objection Deadline and in accordance with the General Objection Procedures will be a bar to the assertion, at hearing on this Motion, the Sale Hearing or thereafter, of any objection to the proposed sale of Assets, including any objection to the sale of any of the Assets free and clear of Liens except as provided in the Purchase Agreement, with any Liens to attach to the sale proceeds that exceed the Purchase Price in the same order of priority, and to the same extent as such Liens were valid, perfected and enforceable prior to such sale.

16. Any non-debtor party to an executory contract or unexpired lease objecting to the potential assumption and assignment of its executory contract or unexpired lease on any grounds (other than the provision of adequate assurance of future performance in connection therewith pursuant to section 365 of the Bankruptcy Code ("Adequate Assurance")) must timely file an objection (the "Cure Amount/Assignment Objection") within twenty (20) days after the date of this Notice (the "Cure Amount/Assignment Objection Deadline") and serve a copy on the Notice

Parties so as to be received by that time and date. A Cure Amount/ Assignment Objection must: (a) comply with the General Objection Procedures; (b) identify the executory contract or unexpired lease to which the objector is party; (c) describe with particularity any cure the claimant contends is required under section 365 of the Bankruptcy Code (the "Cure Claim") and identify the basis(es) of the alleged Cure Claim; and (d) attach all documents supporting or evidencing the Cure Claim or otherwise setting forth the grounds for objection to the proposed assumption and assignment (collectively with the General Objection Procedures, the "Assigned Contract Objection Procedures").

17. If no Cure Amount/Assignment Objection is timely and properly filed and served in accordance with the Assigned Contract Objection Procedures, then the Cure Amount set forth in the Cure Amount Notice shall be controlling notwithstanding anything to the contrary in any executory contract or unexpired lease or other document and the non-debtor party to the executory contract or unexpired lease shall be forever barred from asserting any other claim arising prior to the assignment against the Debtors or the Successful Bidder (or Back-Up Bidder) as to such executory contract or unexpired lease. To the extent the Debtors dispute any Cure Claim, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtors, the objector, and (after the Auction) the Successful Bidder (or Back-Up Bidder), may agree or the Court may order, but such dispute shall not affect in any way the effectiveness of any executory contract or unexpired lease.

17. As soon as possible after the conclusion of the Auction, the Debtors shall file, with, but not serve, a Post Auction Notice, that identifies any Successful Bidder (and Back-Up Bidder) and provides notice that the Debtors will seek to assume and assign the Assigned Contracts at the Sale Hearing.

18. At the Sale Hearing, the Debtors (a) shall present evidence necessary to demonstrate Adequate Assurance by any Successful Bidder (and Back-Up Bidder) and (b) request entry of an order approving the assumption and assignment of any Assigned Contracts to any Successful Bidder (or Back-Up Bidder).

19. If the Court approves the Stalking Horse Bidder as the purchaser of the Assets, the Stalking Horse Bidder may elect to take assignment of certain executory contracts and unexpired leases listed on **Exhibit C** to the Purchase Agreement for up to thirty (30) days after the closing of the Sale (the "Post-Closing Assumed Contracts"). Upon designation of such Post-Closing Assumed Contracts, the Debtors will file with the Court and serve a notice (the "Post-Closing Assumption Notice"), substantially in the form annexed to the Motion as **Exhibit G**, on the non-debtor parties to the Post-Closing Assumed Contracts that identifies the Stalking Horse Bidder as the purchaser of the Assets and provides notice that the Debtors are assuming and assigning the Post-Closing Assumed Contracts to the Stalking Horse Bidder.

20. The Sale does not implicate the provisions of sections 363(b)(1)(A) or 363(b)(1)(B) of the Bankruptcy Code.

21. In the event one or more objections to the relief requested in the Motion are filed, the Debtors are authorized but not required, pursuant to Local Bankruptcy Rule 9006-1(d), to file a consolidated reply to such objection(s) on or before **March 19, 2010 at 12:00 p. m. (Eastern Time)**.

22. To the extent there is any inconsistency between the terms of this Order and the Bidding Procedures, the terms of this Order shall control.

23. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

24. This Order shall be binding upon and inure to the benefit of the Debtors, the Purchaser, and their respective successors and assigns, including any chapter 11 or chapter 7 trustee or other fiduciary appointed in these cases or subsequent cases.

25. The Court shall retain exclusive jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

26. The Debtors are not seeking, through the Motion, approval of a stalking horse bid that contemplates the payment of a break-up fee or expense reimbursement. However, in the event that the Debtors are able to secure an alternative stalking horse bidder that is acceptable to both the Debtors, the DIP Lender and the Prepetition Senior Lender, the Debtors expressly reserve the right to seek approval of bidding protections in favor of such bidder if the Debtors believe that such relief is necessary to maximize the value of their assets for the benefit of the stakeholders of their estates.

Dated: Wilmington, Delaware
       February __, 2010

                              The Honorable Kevin J. Carey
                              Chief United States Bankruptcy Judge

# EXHIBIT 1

# Bidding Procedures

# BIDDING PROCEDURES

Pursuant to the Order Under 11 U.S.C. §§ 105(a), 363, and 365 And Federal Rules Of Bankruptcy Procedure 2002, 6004, 6006 and 9014 (the "Bidding Procedures Order") [Dkt. No. ___],[1] the following initial bidding procedures (the "Bidding Procedures") shall govern the sale (the "Sale") and competitive bidding process applicable to the sale or sales of all or substantially all of the combined assets (the "Assets") of KLCG Property, LLC and Gurnee Property, LLC, debtors and debtors in possession (the "Debtors"):

I. Sale Notice

Upon the approval of these Bidding Procedures, the Debtors will distribute a copy of the Notice of Auction and Sale Hearing to the Service Parties. The Debtors will provide a copy of the Asset Purchase Agreement dated as of January 19, 2010 (collectively with all schedules and exhibits attached thereto, the "Purchase Agreement") by and between the Debtors as sellers ("Sellers") and Dougherty Funding LLC (the "Stalking Horse Bidder") as purchaser, upon request by any party in interest.

II. Participation Requirements

To participate in the process detailed by the Bidding Procedures and to otherwise be considered for any purpose relating to the Bidding Procedures, each bidder ("Potential Bidder") must become a Qualified Bidder. As a prerequisite to becoming a Qualified Bidder, a Potential Bidder must deliver to the Debtors, by no later than **February 25, 2010 at 4:00 p.m. (Eastern Time)** (the "Participant Requirements"):

(a) Identification of Potential Bidder. Identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

(b) Non-Binding Expression of Interest. An executed non-binding indication of interest satisfactory to the Debtors that must reasonably identify the contemplated transaction, including the assets proposed to be acquired, the proposed purchase price, contingencies, and conditions precedent to closing;

(c) Corporate Authority. Written evidence of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction; *provided, however*, that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction (and "Acquisition Entity"), then the Potential Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder (the "Principals");

---

[1] Capitalized terms not otherwise defined in these Bidding Procedures shall have the meanings ascribed to such terms in the Bidding Procedures Order or the Purchase Agreement, as applicable.

(d) <u>Confidentiality Agreement.</u> An executed confidentiality agreement in form and substance acceptable to the Debtors and their respective counsel and substantially on the same terms as the confidentiality agreement approved by the Stalking Horse Bidder; and

(e) <u>Proof of Financial Ability to Perform.</u> Written evidence upon which the Debtors may reasonably conclude that the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, among other things, the following:

> (i) the Potential Bidder's or, in the case of an Acquisition Entity, the Principals', current financial statements (audited if they exist);
>
> (ii) contact names and numbers for verification of financing sources;
>
> (iii) evidence of the Potential Bidder's or Principals' internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and
>
> (iv) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated transaction; *provided, however*, that the Debtors shall determine, in their reasonable discretion, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose Bids for the assets of the Debtors do not overlap and who agree to have their Bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described in paragraphs (a) through (e) above, and that the Debtors, in their discretion and after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, determines is reasonably likely to submit a bona fide offer that would result in greater cash value being received for the benefit of the Debtors' creditors than under the Purchase Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below). No later than three (3) business days after the Potential Bidder delivers all of the documents described in paragraphs (a) through (e) above, the Debtors will notify a Potential Bidder whether it is a Qualified Bidder. The Stalking Horse Bidder is a Qualified Bidder.

III. Bid Deadline and Requirements for Initial Bids

An Initial Bid must be submitted on or before the Bid Deadline which is **March 12, 2010 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline"), via electronic mail or facsimile, to the following:

(a) the Debtors, 1700 Nations Drive, Gurnee, Illinois 60031, Attn: Steve A. Nerger, CRO,

(b) counsel to the Debtors, von Briesen and Roper, S.C., 3 South Pinckney Street, Suite 1000, Madison, Wisconsin 53703-4200, Attn: Claire Ann Resop cresop@vonbriesen.com, and Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Fl., Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com),

(c) the investment bankers for the Debtors, William Blair & Company L.L.C., 222 West Adams Street, Chicago, Illinois 60606, Attn: Geoffrey Richards (grichards@williamblair.com),

(d) counsel to the Stalking Horse Bidder, Fabyanske, Westra, Hart & Thomson, P.A., 800 LaSalle Avenue Suite 1900, Minneapolis, Minnesota, 55402 Attn: Mark W. Westra, mwestra@fwhtlaw.com and Paul Ratelle, pratelle@fwhtlaw.com, and

(e) the Office of the United States Trustee, 844 North King Street, Suite 2207, Wilmington, DE 19801, Attn: Patrick Tinker (fax (302) 573-6497)

(collectively, the "Notice Parties").

The Debtors, in their sole discretion, exercised in consultation with the Stalking Horse Bidder, Prepetition Senior Lender and the Committee, may extend the Bid Deadline without further notice for one or more bidders but shall not be obligated to do so.

IV. Due Diligence and Other Considerations

Upon execution of a confidentiality agreement in form and substance acceptable to the Debtors, the Debtors will provide reasonable access to its books, records and management to bidders for the purpose of conducting due diligence prior to the Auction. By participating in the Auction, all bidders are deemed to acknowledge that they have had sufficient and reasonable access to the Debtors' books, records and management for the purposes of conducting due diligence. All Potential Bidders who submit an Initial Bid shall be deemed to have read, understood, consented to and agreed to be bound by the provisions of the Bidding Procedures Order and these Bidding Procedures.

V.  **Determination of Qualified Bid Status**

For any Initial Bid to constitute a Qualified Bid, such Initial Bid must, at a minimum, comply with the following requirements:

(a) The Initial Bid must be received by the Bid Deadline;

(b) The Initial Bid must contain a signed definitive asset purchase agreement (together with a copy of the signed agreement that is marked to show changes from the Purchase Agreement) (a "Qualified APA") and identifying the Assets the party seeks to purchase with, at a minimum, the following requirements: (i) having terms and conditions no less favorable to the Debtors than those of the Purchase Agreement, except with higher or better consideration, which can be determined by aggregating bids made on different portions of the Debtors' Assets ("Aggregate Bids") (provided that no Initial Bid shall provide for the payment to such bidder of any breakup fee, topping fee, expense reimbursement, or other similar arrangement); (ii) providing for consideration that is, alone or in conjunction with other Competing Bids when weighed against the transaction contemplated by the Purchase Agreement, in Sellers' reasonable business judgment, as determined after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, likely to result in value to Sellers (taking into account the impact of any delay in closing the transaction contemplated by such Competing Bid(s), purchase price adjustments, arrangements regarding Sellers' Inventory and Accounts Receivable, cure amounts, contracts to be assumed and assigned, closing conditions, certainty of completion and any other relevant factors) greater than the sum of: (A) cash consideration greater than the amount of the credit bid set forth in thePurchase Agreement, plus (B) the Cure Amounts to be paid by the purchaser, plus (C) the balance of the fee due William Blair & Company in connection with the sale of the Purchased Assets to the purchaser, plus (D) $150,000 (the "Minimum Overbid Amount"); (iii) providing for a deposit (the "Deposit")in the aggregate amount of at least equal to $150,000 and (iv) not being subject to any (w) financing contingency, (y) contingency relating to the approval of the bidder's board of directors or other internal approvals or consents, or (z) any conditions precedent to the bidder's obligation to purchase the Assets other than those included in the Purchase Agreement (See Purchase Agreement, **Section 7.2(b)** and **Schedule 7.2(b)**;

(c) The Initial Bid(s) must be accompanied by the provision of a certified or bank check, wire transfer, or letter of credit reasonably acceptable to the Debtors, in consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, in the aggregate amount of the Deposit, to be held in escrow and credited to the closing payment if the bidder(s) are ultimately determined to be the Successful Bidder(s) (as defined below) or to be returned to the bidder(s) otherwise and a written statement that the bidder(s) agree to be bound by the terms of these Bidding Procedures and the Bidding Procedures Order;

(d) To the extent not previously provided to Debtors, the Initial Bid must be accompanied by evidence satisfactory to Debtors in their commercially reasonable discretion, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, that the bidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under its Qualified APA (or its equivalent) in the event that it submits a "Successful Bid" (as defined below) at the Auction;

(e) The Initial Bid(s) must remain open and irrevocable through and including the second Business Day after the Assets on which a Qualified Bidder is submitting a bid have been sold pursuant to the closing of the sale approved by the Bankruptcy Court;

(f) The Initial Bid must clearly state the range of cash consideration, in U.S. dollars, that the bidder(s) are prepared to pay for any or all of Debtors' assets. Only cash consideration will be evaluated for this purpose; the utilization of notes or other instruments to make up a portion of the cash consideration will not be evaluated as cash; and

(g) The Initial Bid must be accompanied by information and assurances satisfactory to the Debtors that the bidder(s) can obtain all required consents, approvals and licenses to fulfill the terms, conditions and obligations under any and all related agreements, including but not limited to, sufficient information to permit the Court, the Debtors and any applicable lessors or counterparties to determine the proposed assignee's ability to comply with the requirements of section 365 of the Bankruptcy Code (to the extent applicable).

The Sellers, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, will evaluate any Initial Bids submitted by a Qualified Bidder and determine whether to deem any such bid(s) as a "Qualified Bid". Initial Bids will be evaluated on the basis of factors such as but not limited to: (m) the indicated purchase price, (n) the Qualified Bidder's financial capacity to consummate a transaction if selected as the Successful Bidder, (o) the extent and type of requested changes to the Purchase Agreement, (p) any required government approvals and the perceived timing and difficulty in connection therewith; (q) the Qualified Bidder's ability to expeditiously consummate the transaction if selected as a Successful Bid, and (r) other factors deemed appropriate in the Sellers' discretion, as exercised after consultation with the DIP Lender, the Prepetition Senior Lender and Committee. The Sellers, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, will select those Initial Bids that they consider to be Qualified Bids as soon as practicable after the submission of the Initial Bid and will notify the Potential Bidder whether its Initial Bid is a Qualified Bid, but in event prior to the Auction, *provided, however,* that the Sellers, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, reserve the right to : (y) determine the value of any Qualified Bid and which Qualified Bid constitutes the highest or best offer; and/or (z) reject any Initial Bid as insufficient. The Stalking Horse Bid is a Qualified Bid. If no other Qualified Bid is received, the Sellers shall have no obligation to conduct an Auction.

## VI. The Auction

If a Qualified Bid, other than that submitted by the Stalking Horse Bidder is received, then the Sellers will conduct an auction (the "Auction"), currently proposed to be held on **March 16, 2010 at 10:00 a.m. (Eastern time)** at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Fl., Wilmington, Delaware 19801 or such other place and time as the Debtors shall notify all Qualified Bidders and expressed their intent to participate in the Auction, subject to change. In order to participate in the Auction, each prospective purchaser must be a Qualified Bidder and shall be required to comply with the requirements of the Bidding Procedures. The Stalking Horse Bidder, parties who submit Qualified Bids prior to the Bid Deadline, the DIP Lender, the Prepetition Senior Lender, counsel to the Committee, the United States Trustee, the Debtors, and the professionals of the foregoing shall be entitled to attend and be heard at the Auction. Any creditor of the Debtors who wishes to attend the Auction may do so as long as it gives written notice of its planned attendance to Debtors' counsel at least two (2) business days prior to the Auction. Each bidder participating at the Auction must confirm on the record that it has not and will not engage in any collusion with respect to the bids submitted at the Auction. The bidding at any Auction will be transcribed by a court reporter.

Except as otherwise provided in the Bidding Procedures Order, based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtors determine is relevant, the Debtors, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, may conduct the Auction in any manner that they determine will achieve the maximum value for the Assets.

Prior to concluding the Auction, the Debtors, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, will (a) review each Qualified Bid on the basis of the financial and contractual terms and factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; and (b) identify the highest or otherwise best offer for the Assets (to the extent any such bid is acceptable to Debtors, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, and subject to Bankruptcy Court approval, the "Successful Bid(s)" and each bidder making such bid, a "Successful Bidder") and the next highest or otherwise best offer, if any, after the Successful Bid (the "Back-Up Bid" and the bidder making such bid, the "Back-Up Bidder").

Subject to the terms and provisions of the Purchase Agreement, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, reserve the right to reject at any time prior to the entry of an order of the Bankruptcy Court approving a sale of any of the Debtors' Assets, any offer which the Debtors deem to be (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Delaware, or the terms and conditions of the Sale set forth herein, or (iii) contrary to the best interests of the Debtors, their estates, and their creditors.

DB02:9233882.1

068913.1001

VII. The Sale Hearing

    (a) The hearing on the approval of the Sale (the "Sale Hearing") to the Successful Bidder shall be conducted by the Bankruptcy Court on **March 22, 2010 at 10:00 a.m. (Eastern Time)** or at such other time as the Bankruptcy Court permits.

    (b) The Stalking Horse Bid is a qualified and acceptable bid.

    (c) The Debtors shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing.

    (d) Subject to Bankruptcy Court approval following the Auction, the Successful Bidder(s) shall purchase the Assets, free and clear of all liens, claims, interests and encumbrances, pursuant to the Successful Bid and the corresponding order(s) of the Court approving the Sale.

    (e) Upon the failure to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bid, as disclosed and approved at the Sale Hearing, shall be deemed to be the Successful Bid(s) without further order of the Court and the Debtors will be authorized, but not required, to consummate the Sale(s) with the Back-Up Bidder.

    (g) The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Sale Hearing.

    (g) Any sale of the Assets shall be without representation or warranties of any kind, nature or description by the Debtors, their agents or their estate, except as provided in the purchase agreement between the Debtors and the subject purchaser. All of the Assets shall be transferred "as is," "where is" and "with all faults." **THE DEBTORS EXPRESSLY DISCLAIM ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND MAKE NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF ANY ASSET.**

VIII. Procedures Governing Deposits

    (a) All Deposits shall be subject to the jurisdiction of the Bankruptcy Court and shall be returned by the Debtors to the unsuccessful bidders as soon as reasonably practicable after the closing of the Sale; provided, however, that if the Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, such Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder, except as to the Stalking Horse Bidder, in which case the provisions of the Purchase Agreement and the deposit agreement executed by the parties thereto shall control.

(b) All Deposits shall be held, subject to the provisions of the Bidding Procedures Order and these Bidding Procedures by counsel for the Debtors or, in the Debtors' discretion, by a third-party escrow agent (either, a "Custodian") in a segregated non-interest bearing bank account. Subject to the terms of the Purchase Agreement and the deposit agreement signed by the parties thereto, in the event of a dispute concerning the Sellers' right to retain any Deposit, the Custodian shall have no liability to any bidder for the failure to return such Deposit to the bidder, and the bidder's sole remedy shall be to seek relief from the Bankruptcy Court to compel the return of the Deposit; provided, however, that nothing in the Bidding Procedures Order or these Bidding Procedures shall waive, release or restrict any right or remedy of any person arising from the wrongful disbursement or loss of any Deposit.

## IX. No Expense Reimbursement

Except as otherwise ordered by the Bankruptcy Court, no bidder shall be entitled to reimbursement of its costs, expenses or professional fees incurred in connection with the Sale and competitive bidding process for the Assets, including formulation and submission of any bid or any due diligence efforts.

## X. Reservation of Rights

Subject to the terms and provisions of the Purchase Agreement, the Debtors, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, reserve their rights to: (a) impose at or before the Auction such other and additional terms and conditions as may be in the interest of the Debtors, their estates and creditors (so long as such terms are not materially inconsistent with the terms of the Bidding Procedures Order or these Bidding Procedures); (b) extend the deadlines set forth in the Bidding Procedures Order and/or these Bidding Procedures; (c) adjourn the Auction at or before the Auction; (d) adjourn the Sale Hearing without further notice by making an announcement in open Court or by the filing of a hearing agenda pursuant to Bankr. D. Del. L.R. 9029-3; (e) waive the terms and conditions set forth herein; (f) withdraw from the Auction some or all of the Assets at any time prior to or during the Auction; and (g) cancel the Auction.

In the event that the Debtors are able to secure an alternative stalking horse bidder that is acceptable to the Debtors, the DIP Lender and the Prepetition Senior Lender, the Debtors expressly reserve the right to seek approval of bidding protections in favor of such bidder if the Debtors believe that such relief is necessary to maximize the value of their assets for the benefit of the stakeholders of their estates.

viii

DB02:9233882.1 068913.1001