# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KLCG PROPERTY, LLC, and GURNEE PROPERTY, LLC, | Case No. 09-14418 (KJC) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF AUCTION AND SALE

### TO ALL CREDITORS AND OTHER PARTIES IN INTEREST:

1. <u>Chapter 11 Petitions</u>. On December 16, 2009 (the "<u>Petition Date</u>"), KLCG PROPERTY, LLC, and GURNEE PROPERTY, LLC, the debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"), Case No. 09-14418(KJC).

2. <u>The Sale Motion</u>. On January 19, 2010, the Debtors filed their *Motion for entry of orders: (A)(i) Establishing Bidding And Auction Procedures For The Sale Of All Or Substantially All Of The Debtors' Assets; (ii) Approving Bid Protections For The Stalking Horse Bidder; (iii) Permitting Credit Bidding Pursuant To Bankruptcy Code Section 363(K); (iv) Scheduling An Auction And Sale Hearing For The Sale Of All Or Substantially All Of The Debtors' Assets; (v) Approving Notice Of Procedures For The Solicitation Of Bids, An Auction And The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Notice Of Proposed Cure Amounts; And (vi) Granting Related Relief, and (B)(i)Authorizing The Sale Of Such Assets Free And Clear Of Liens, Claims And Encumbrances And Other Interests; (ii) Authorizing And Approving Asset Purchase Agreement; (iii) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto; and (iv) Granting Related Relief* (the "<u>Sale Motion</u>") [Docket No. 92] with the Bankruptcy Court.[2] By the Sale Motion, the Debtors seek Bankruptcy Court approval of the Asset Purchase Agreement, dated as of January 19, 2010 (collectively, with all schedules and exhibits, the "<u>Purchase Agreement</u>"), between the Debtors and Dougherty Funding LLC or its assignee(s) or designee(s) (the "<u>Stalking Horse Bidder</u>"). You may obtain a copy of the Purchase Agreement by making a written request to the undersigned counsel to the Debtors.

3. <u>The Bidding Procedures Order</u>. On February 5, 2010, the Bankruptcy Court entered an order (the "<u>Bidding Procedures Order</u>"): (a) establishing bidding and auction

---

[1] The last four digits of Debtors' federal tax identification numbers are: KLCG Property LLC (0521) and Gurnee Property, LLC (1995). The Debtors' address is 1700 Nations Drive, Gurnee, Illinois 60031.
[2] All capitalized terms not defined herein shall be given the meaning ascribed to them in the Bidding Procedures Order (as hereinafter defined).

procedures for the sale of all or substantially all of the Debtors' assets; (b) approving bid protections for the Stalking Horse Bidder; (iii) permitting credit bidding pursuant to Bankruptcy Code section 363(k); (iv) scheduling an Auction and Sale Hearing for the sale of all or substantially all of the Debtors' assets; (v) approving notice of procedures for the solicitation of bids, an Auction and the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts; and (vi) granting related relief. Although the Debtors entered into the Purchase Agreement with the Stalking Horse Bidder to sell substantially all of the Debtors' Assets (the "Proposed Sale"), the Purchase Agreement and the Proposed Sale is subject to further offers pursuant to the Bidding Procedures Order. A copy of the Bidding Procedures Order may be found at Docket No. 136 by accessing the Court's website at www.deb.uscourts.gov, or a copy may be obtained by making a written request to the undersigned counsel to the Debtors.

4. **Deadline for Objection to the Sale Motion.** All objections to the relief requested in the Sale Motion in connection with the actual sale of the Debtors' Assets (other than any objection to the assumption or assignment of any executory contract or unexpired lease or the proposed Cure Amount with respect thereto) must be: (a) in writing; (b) comply with the Federal Rules of Bankruptcy Procedures and the Local Bankruptcy Rules (c) signed by counsel or attested to by the objecting party; (d) filed with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, DE 19801 on or **before March 11, 2010 at 4:00 p.m, (Eastern Time)** (the "Sale Objection Deadline"); and (e) served so as to be received on or before the Objection Deadline by: (a) the Debtors, 1700 Nations Drive, Gurnee, Illinois 60031, Attn: Steve A. Nerger, CRO, (b) counsel to the Debtors, von Briesen and Roper, S.C., 3 South Pinckney Street, Suite 1000, Madison, Wisconsin 53703-4200, Attn: Claire Ann Resop (cresop@vonbriesen.com) and Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Fl., Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com), (c) the investment bankers for the Debtors, William Blair & Company L.L.C., 222 West Adams Street, Chicago, Illinois 60606, Attn: Geoffrey Richards (grichards@williamblair.com), (d) counsel to the Stalking Horse Bidder, Fabyanske, Westra, Hart & Thomson, P.A., 800 LaSalle Avenue Suite 1900, Minneapolis, Minnesota, 55402 Attn: Mark W. Westra, mwestra@fwhtlaw.com and Paul Ratelle, pratelle_@fwhtlaw.com and (e) the Office of the United States Trustee, 844 North King Street, Suite 2207, Wilmington, DE 19801, Attn: Patrick Tinker (fax (302) 573-6497) (collectively, the "Notice Parties").

5. **Deadline for Objection to the Assumption and Assignment of Executory Contracts and Unexpired Leases.** Any objection (a "Cure Amount/Assignment Objection") to the potential assumption and assignment of any executory contract or unexpired lease on any grounds (other than the provision of adequate assurance of future performance in connection therewith pursuant to section 365 of the Bankruptcy Code ("Adequate Assurance")) and any objection to Adequate Assurance must be filed and served in accordance with the separately delivered Cure Amount Notice.

6. **Bidding Procedures.** Participation at the Auction is subject to the "Bidding Procedures" annexed to the Bidding Procedures Order as <u>Exhibit 1</u> and the Bidding Procedures Order. The Bidding Procedures include the following:

(1) <u>Participation Requirements</u>.

To participate in the process detailed by the Bidding Procedures and to otherwise be considered for any purpose relating to the Bidding Procedures, each bidder ("<u>Potential Bidder</u>") must become a Qualified Bidder. As a prerequisite to becoming a Qualified Bidder, a Potential Bidder must deliver to the Debtors, by no later than **February 25, 2010 at 4:00 p.m. (Eastern Time)** (the "<u>Participant Requirements</u>"):

(a) <u>Identification of Potential Bidder</u>. Identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

(b) <u>Non-Binding Expression of Interest</u>. An executed non-binding indication of interest satisfactory to the Debtors that must reasonably identify the contemplated transaction, including the assets proposed to be acquired, the proposed purchase price, contingencies, and conditions precedent to closing;

(c) <u>Corporate Authority</u>. Written evidence of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction; *provided, however*, that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction (and "<u>Acquisition Entity</u>"), then the Potential Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder (the "<u>Principals</u>");

(d) <u>Confidentiality Agreement</u>. An executed confidentiality agreement in form and substance acceptable to the Debtors and their respective counsel and substantially on the same terms as the confidentiality agreement approved by the Stalking Horse Bidder; and

(e) <u>Proof of Financial Ability to Perform</u>. Written evidence upon which the Debtors may reasonably conclude that the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, among other things, the following:

(i) the Potential Bidder's or, in the case of an Acquisition Entity, the Principals', current financial statements (audited if they exist);

(ii) contact names and numbers for verification of financing sources;

(iii) evidence of the Potential Bidder's or Principals' internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

(iv) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated transaction; *provided, however*, that the Debtors shall determine, in their reasonable discretion, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose Bids for the assets of the Debtors do not overlap and who agree to have their Bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described in paragraphs (a) through (e) above, and that the Debtors, in their discretion and after consultation with the DIP Lender, the Prepetition Senior Lender and official committee of unsecured creditors appointed by the Office of the United States Trustee on or about January 7, 2010 (the "Committee"), determines is reasonably likely to submit a bona fide offer that would result in greater cash value being received for the benefit of the Debtors' creditors than under the APA and to be able to consummate a sale if selected as a Successful Bidder (defined below). No later than three (3) business days after the Potential Bidder delivers all of the documents described in paragraphs (a) through (e) above; the Debtors will notify a Potential Bidder whether it is a Qualified Bidder. The Stalking Horse Bidder is a Qualified Bidder.

(2) Bid Deadline and Requirements for Initial Bids.

An Initial Bid must be submitted on or before the Bid Deadline which is **March 12, 2010 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline"), via electronic mail or facsimile, to the Notice Parties. The Debtors, in their sole discretion, exercised in consultation with the Stalking Horse Bidder, the Prepetition Senior Lender and the Committee, may extend the Bid Deadline without further notice for one or more bidders but shall not be obligated to do so.

(3) Due Diligence and Other Considerations.

Upon execution of a confidentiality agreement in form and substance acceptable to the Debtors, the Debtors will provide reasonable access to its books, records and management to bidders for the purpose of conducting due diligence prior to the Auction. By participating in the Auction, all bidders are deemed to

4

acknowledge that they have had sufficient and reasonable access to the Debtors' books, records and management for the purposes of conducting due diligence.

(4) <u>Determination of Qualified Bid Status</u>.

For any Initial Bid to constitute a Qualified Bid, such Initial Bid must, at a minimum, comply with the following requirements:

(a) The Initial Bid must be received by the Bid Deadline;

(b) The Initial Bid must contain a signed definitive asset purchase agreement (together with a copy of the signed agreement that is marked to show changes from the APA) (a "<u>Qualified APA</u>") and identifying the Assets the party seeks to purchase with, at a minimum, the following requirements: (i) having terms and conditions no less favorable to the Debtors than those of the APA except with higher or better consideration, which can be determined by aggregating bids made on different portions of the Debtors' Assets ("<u>Aggregate Bids</u>") (provided that no Initial Bid shall provide for the payment to such bidder of any breakup fee, topping fee, expense reimbursement, or other similar arrangement); (ii) providing for consideration that is, alone or in conjunction with other Competing Bids when weighed against the transaction contemplated by the APA, in Sellers' reasonable business judgment, as determined after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, likely to result in value to Sellers (taking into account the impact of any delay in closing the transaction contemplated by such Competing Bid(s), purchase price adjustments, arrangements regarding Sellers' Inventory and Accounts Receivable, cure amounts, contracts to be assumed and assigned, closing conditions, certainty of completion and any other relevant factors) greater than the sum of (A) cash consideration greater than the amount of the credit bid set forth in the APA, <u>plus</u> (B) the Cure Amounts to be paid by the purchaser, <u>plus</u> (C) the balance of the fee due William Blair & Company in connection with the sale of the Purchased Assets to the purchaser, <u>plus</u> (D) $150,000 (the "<u>Minimum Overbid Amount</u>"); (iii) providing for a deposit (the "<u>Deposit</u>")in the aggregate amount of at least equal to $150,000 and (iv) not being subject to any (w) financing contingency, (y) contingency relating to the approval of the bidder's board of directors or other internal approvals or consents, or (z) any conditions precedent to the bidder's obligation to purchase the Assets other than those included in the APA (See APA, **Section 7.2(b)** and **Schedule 7.2(b)**;

(c) The Initial Bid(s) must be accompanied by the provision of a certified or bank check, wire transfer, or letter of credit reasonably acceptable to the Debtors, in consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, in the aggregate amount of the Deposit, to be

held in escrow and credited to the closing payment if the bidder(s) are ultimately determined to be the Successful Bidder(s) (as defined below) or to be returned to the bidder(s) otherwise and a written statement that the bidder(s) agree to be bound by the terms of these Bidding Procedures and the Bidding Procedures Order;

(d) To the extent not previously provided to Debtors, the Initial Bid must be accompanied by evidence satisfactory to Debtors in their commercially reasonable discretion, as exercised after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, that the bidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under its Qualified APA (or its equivalent) in the event that it submits a "Successful Bid" (as defined below) at the Auction;

(e) The Initial Bid(s) must remain open and irrevocable through and including the second Business Day after the Assets on which a Qualified Bidder is submitting a bid have been sold pursuant to the closing of the sale approved by the Bankruptcy Court;

(f) The Initial Bid must clearly state the range of cash consideration, in U.S. dollars, that the bidder(s) are prepared to pay for any or all of Debtors' assets. Only cash consideration will be evaluated for this purpose; the utilization of notes or other instruments to make up a portion of the cash consideration will not be evaluated as cash; and

(g) The Initial Bid must be accompanied by information and assurances satisfactory to the Debtors that the bidder(s) can obtain all required consents, approvals and licenses to fulfill the terms, conditions and obligations under any and all related agreements, including but not limited to, sufficient information to permit the Court, the Debtors and any applicable lessors or counterparties to determine the proposed assignee's ability to comply with the requirements of section 365 of the Bankruptcy Code (to the extent applicable).

The Sellers, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, will evaluate any Initial Bids submitted by a Qualified Bidder and determine whether to deem any such bid(s) as a "Qualified Bid". Initial Bids will be evaluated on the basis of factors such as but not limited to: (m) the indicated purchase price, (n) the Qualified Bidder's financial capacity to consummate a transaction if selected as the Successful Bidder, (o) the extent and type of requested changes to the APA, (p) any required government approvals and the perceived timing and difficulty in connection therewith; (q) the Qualified Bidder's ability to expeditiously consummate the transaction if selected as a Successful Bid, and (r) other factors deemed appropriate in the Sellers' discretion, as exercised after consultation with the DIP Lender, the Prepetition Senior Lender

and the Committee. The Sellers, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, will select those Initial Bids that they consider to be Qualified Bids as soon as practicable after the submission of the Initial Bid and will notify the Potential Bidder whether its Initial Bid is a Qualified Bid, but in event prior to the Auction, *provided, however,* that the Sellers, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, reserve the right to : (y) determine the value of any Qualified Bid and which Qualified Bid constitutes the highest or best offer; and/or (z) reject any Initial Bid as insufficient. The Stalking Horse Bid is a Qualified Bid. If no other Qualified Bid is received, the Sellers shall have no obligation to conduct an Auction.

(5)  The Auction.

If a Qualified Bid, other than that submitted by the Stalking Horse Bidder is received, then the Sellers will conduct an auction (the "Auction") on **March 16, 2010 at 10:00 a.m. (Eastern Time)** at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Fl., Wilmington, Delaware 19801 or such other place and time as the Debtors shall notify all Qualified Bidders and expressed their intent to participate in the Auction, subject to change. In order to participate in the Auction, each prospective purchaser must be a Qualified Bidder and shall be required to comply with the requirements of the Bidding Procedures. The Stalking Horse Bidder, parties who submit Qualified Bids prior to the Bid Deadline, the DIP Lender, the Prepetition Senior Lender, counsel to the Committee, the United States Trustee, the Debtors, and the professionals of the foregoing shall be entitled to attend and be heard at the Auction. Any creditor of the Debtors that wishes to attend the Auction may do so as long as it gives written notice of its planned attendance to Debtors' counsel at least two (2) business days prior to the Auction. Each bidder participating at the Auction must confirm on the record that it has not and will not engage in any collusion with respect to the bids submitted at the Auction. The bidding at any Auction will be transcribed by a court reporter.

Except as otherwise provided in the Bidding Procedures Order, based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtors determine is relevant, the Debtors, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, may conduct the Auction in any manner that they determine will achieve the maximum value for the Assets.

Prior to concluding the Auction, the Debtors, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, will (a) review each Qualified Bid on the basis of the financial and contractual terms and factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; and (b) identify the highest or otherwise best offer for the Assets (to the extent any such bid is acceptable to Debtors, after

7

consultation with the DIP Lender, the Prepetition Senior Lender and the Committee and subject to Bankruptcy Court approval, the "Successful Bid(s)" and each bidder making such bid, a "Successful Bidder") and the next highest or otherwise best offer, if any, after the Successful Bid (the "Back-Up Bid" and the bidder making such bid, the "Back-Up Bidder").

Prior to the conclusion of the Sale Hearing (unless otherwise agreed to by the Debtors and the Successful Bidder(s)), the bidder or bidders making the Successful Bid or Bids, if any, shall complete and sign all agreements or other documents evidencing and containing the terms and conditions upon which such bid was made, if it has not already done so.

Subject to the terms and provisions of the Purchase Agreement, the Debtors, after consultation with the DIP Lender, the Prepetition Senior Lender and the Committee, reserve the right to reject at any time prior to the entry of an order of the Bankruptcy Court approving a sale of any of the Debtors' Assets, any offer which the Debtors deem to be (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Delaware, or the terms and conditions of the Sale set forth herein, or (iii) contrary to the best interests of the Debtors, their estates, and their creditors.

(6) The Sale Hearing.

The hearing on the approval of the Sale (the "Sale Hearing") to the Successful Bidder shall be conducted before the Honorable Kevin J. Carey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom #5, Wilmington, Delaware 19801 on **March 22, 2010 at 10:00 a. m. (Eastern Time)** or at such other time as the Bankruptcy Court permits. The Debtors shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing. Subject to Bankruptcy Court approval following the Auction, the Successful Bidder(s) shall purchase the Assets, free and clear of all liens, claims, interests and encumbrances, pursuant to the Successful Bid and the corresponding order(s) of the Court approving the Sale. Upon the failure to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bid, as disclosed and approved at the Sale Hearing, shall be deemed to be the Successful Bid(s) without further order of the Court and the Debtors will be authorized, but not required, to consummate the Sale(s) with the Back-Up Bidder. The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Sale Hearing.

7. Alternative Stalking Horse Bidder. In the event that the Debtors are able to secure an alternative stalking horse bidder that is acceptable to the Debtors, the DIP Lender and the

Prepetition Senior Lender, the Debtors expressly reserve the right to seek approval of bidding protections in favor of such bidder if the Debtors believe that such relief is necessary to maximize the value of their assets for the benefit of the stakeholders of their estates.

8. <u>Bidding Procedures Order Controls</u>. This notice is qualified in its entirety by the Bidding Procedures Order.

Dated: February 9, 2010
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Michael R. Nestor (No. 3526)
Donald J. Bowman, Jr. (No. 4383)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

Randall D. Crocker (Wis. Bar No. 1000251)
Claire Ann Resop (Wis. Bar No. 1020942)
VON BRIESEN AND ROPER, S.C.
3 South Pinckney Street, Suite 1000
Madison, Wisconsin 53703-4200
Telephone: (608) 441-0300
Facsimile: (608) 441-0301

*Attorneys for the Debtors and Debtors in Possession*