# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KLCG PROPERTY, LLC, and<br>GURNEE PROPERTY, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 09-14418 (KJC)<br><br>(Jointly Administered)<br><br>**Ref. Docket No.: 92** |

## ORDER UNDER 11 U.S.C. §§ 105(a), 363, 365, 503, AND 507 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, 6006 AND 9014 (A) APPROVING THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363, (B) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion") of the above-captioned debtors and debtors-in-possession (the "Debtors"), pursuant to sections 105, 363, 365, 503, and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order authorizing and approving (a) the sale of all or substantially all of the assets relating to the Debtors' business (the "Purchased Assets") described in and pursuant to the terms and conditions of an executed Asset Purchase Agreement, dated as of January 19, 2010 (collectively with all schedules and exhibits thereto, the "Original Purchase Agreement") by and between the Debtors, as sellers (the "Sellers") and Dougherty Funding LLC or its assignee(s) or designee(s) (the "Purchaser"), subject to higher and/or better offers and (b) the assumption and assignment of certain executory contracts and unexpired leases; and the Court having reviewed and considered (i) the Sale Motion and all relief related thereto, (ii) any objections thereto and (iii) the Court having heard

---

[1] The last four digits of Debtors' federal tax identification numbers are: KLCG Property LLC (0521) and Gurnee Property, LLC (1995). The Debtors' address is 1700 Nations Drive, Gurnee, Illinois 60031.

the statements of counsel and the evidence presented in support of the relief requested by the Sale Motion at a hearing before the Court on March 25, 2010 at 1:30 p.m. (ET) (the "Sale Hearing"), including the Declaration of Steven A. Nerger in Support of the Sale [Docket No. 193] and the Declaration of Geoffrey A. Richards in Support of the Sale [Docket No. 194]; and the Court having jurisdiction to consider and determine the Sale Motion in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Sale Hearing and the Sale Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED:

General

A. All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Sale Motion or the Purchase Agreement (defined below), as applicable. In the event of any inconsistency, the Purchase Agreement shall control.

B. The Court has jurisdiction to consider the Sale Motion and the relief requested therein under 28 U.S.C. §§ 157and 1334. The Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

C. The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f), and (m) and 365(a), (b) and (f), 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

D. On February 5, 2010, the Court entered the Order Under 11 U.S.C. §§ 105(a), 363, 365, 503 and 507 and Federal Rules Of Bankruptcy Procedure 2002, 6004, 6006 and 9014 (A) Establishing Bidding And Auction Procedures For The Sale Of All Or Substantially All Of The Debtors' Assets; (B) Approving Bid Protections For The Stalking Horse Bidder; (C)

Permitting Credit Bidding Pursuant To Bankruptcy Code Section 363(k); (D) Scheduling An Auction And Sale Hearing For The Sale Of All Or Substantially All Of The Debtors' Assets; (E) Approving Notice Of Procedures For The Solicitation Of Bids, An Auction And The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Notice Of Proposed Cure Amounts; And (F) Granting Related Relief (the "Bidding Procedures Order") [Docket No. 136], pursuant to which the Court, *inter alia*, authorized the Debtors to conduct an auction (the "Auction") of all or substantially all of their assets and approved the bidding procedures annexed to the Bidding Procedures Order (the "Bidding Procedures").

E. As evidenced by the certificates of service filed with the Court, and based on the representations made at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the transactions contemplated therein (including the proposed assumption and assignment of the Assigned Contracts), the Bidding Procedures Order, the Bidding Procedures, the Auction and the Sale Hearing has been provided in accordance with sections 102, 105, 363 365, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014; (ii) such notice was good and sufficient and appropriate under the particular circumstances of these cases; and (iii) no other or further notice of the Sale Motion, the transactions contemplated therein (including the assumption and assignment of the Assigned Contracts), the Bidding Procedures Order, the Bidding Procedures, the Auction, the Sale Hearing or the entry of this Order is required.

F. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to: (i) the Office of the United States Trustee (the "OUST"); (ii) Dougherty Funding LLC in its separate capacities as DIP Lender and Prepetition Senior Lender; (iii) the

official committee of unsecured creditors appointed by OUST on or about January 7, 2010 (the "Committee"), (iv) known persons holding a lien, claim, encumbrance or other interest in, to or against any of the Purchased Assets; (v) known parties to the Assigned Contracts; (vi) applicable federal, state and local taxing authorities; (vii) applicable federal, state and local governmental units; (viii) known creditors; and (ix) all entities who have filed a notice of appearance and request for service of papers in the Debtors' bankruptcy cases pursuant to Bankruptcy Rule 2002.

### The Bankruptcy Cases

G. On December 16, 2009, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to manage their assets and operate their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

### The Sale Process for the Purchased Assets

H. The Debtors have marketed the Purchased Assets diligently, in good faith and in a commercially reasonable manner to secure the highest and/or best offer or offers therefor by, among other things, delivering offering materials to potential purchasers and inviting potential purchasers to meet with management and the Debtors' professionals and providing potential purchasers with the opportunity to conduct extensive due diligence (electronic, remote, and on-site due diligence). In addition, the Bidding Procedures Order, the Bidding Procedures, the Original Purchase Agreement and the Sale Motion were delivered to or made available to each of the entities that had previously expressed an interest in the Purchased Assets.

I. The Purchaser submitted the highest and best offer for the Purchased Assets on terms and conditions set forth in the Purchase Agreement.

4

DB02:9158727.5                                                                                           068913.1001

J.  The Bidding Procedures afforded a full, fair and reasonable opportunity for any entity to make a higher or better offer to purchase the Purchased Assets and no higher or better offer(s) for the Purchased Assets has been made than that of the Purchaser.

K.  The Debtors and the Purchaser have complied with the Bidding Procedures Order and the Bidding Procedures in all material respects.

### The Sale of the Purchased Assets to the Purchaser

L.  The transactions effectuating, and the terms and conditions governing, the sale of the Purchased Assets to the Purchaser are embodied in the Asset Purchase Agreement attached hereto as Exhibit A (together with all schedules and exhibits attached thereto, the "Purchase Agreement"). A description of the Purchased Assets is contained in the Purchase Agreement. Moreover, Exhibit B attached hereto sets forth a description of the executory contracts and unexpired leases (the "Assigned Contracts") that the Debtors, in accordance with the Purchase Agreement, shall assume and assign to the Purchaser (the "Exhibit B Contracts").

M.  The Purchase Agreement contemplates that the sale of the Purchased Assets shall be free and clear of all liens, claims, interests, and other encumbrances within the meaning of section 363(f) of the Bankruptcy Code (collectively, "Liens"); provided, however, that all such Liens shall attach to the proceeds of the sale of the Purchased Assets in excess of the "Purchase Price" (as defined in the Purchase Agreement) in the order of their priority, and with the same validity, priority, force and effect which such holder has prior to the sale of the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest.

N.  The Purchaser's obligation to consummate the transactions contemplated in the Purchase Agreement is subject to the specific conditions set forth in the Purchase Agreement,

including Court approval. As of the date of entry of this Order, there is no known failure of any condition under the Purchase Agreement to the Purchaser's obligation to consummate the Sale that would entitle the Purchaser not to consummate the Sale pursuant to the Purchase Agreement or to terminate the Purchase Agreement.

O. The Purchase Agreement was negotiated, proposed, and entered into by and between the Purchaser and the Debtors without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the application of section 363(n) of the Bankruptcy Code to the Sale, including having the Purchase Agreement voided.

P. The Purchaser is a good faith purchaser in accordance with section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Absent a stay of the effectiveness of this Order, if any, the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions under the Purchase Agreement, including the assumption and assignment of the Assigned Contracts, after entry of this Order and, in the event of any stay of this Order, at any time after the expiration of such stay, whether pursuant to Bankruptcy Rules 6004(h), 6006, or otherwise.

Q. The Assigned Contracts to be assumed and assigned to the Purchaser are valid and binding, in full force and effect, and enforceable in accordance with their terms, and are property of the Debtors' estates pursuant to section 541(a) of the Bankruptcy Code.

R. The terms and conditions of the Purchase Agreement: (i) are fair and reasonable, (ii) valid, binding and enforceable, (iii) constitute the highest and best offer for the Purchased Assets, (iv) will provide a greater recovery for the Debtors' creditors than would be provided by

any other practical available alternative and (v) constitute reasonably equivalent value and fair consideration for the Purchased Assets.

S. The transactions contemplated by the Purchase Agreement will, upon consummation thereof (the "Closing"), (i) be a legal, valid, and effective transfer of the Purchased Assets to the Purchaser with no further action required on the part of the Debtors or their respective affiliates and (ii) vest the Purchaser with good title to the Purchased Assets free and clear of all Liens pursuant to section 363(f) of the Bankruptcy Code.

T. The Purchaser would not have entered into the Purchase Agreement and will not consummate the transactions described in the Purchase Agreement (thus adversely affecting the bankruptcy estates and creditors) if the sale of the Purchased Assets and the assignment of the Assigned Contracts were not free and clear of all Liens.

U. The relief sought in the Sale Motion, including approval of the Purchase Agreement and consummation of the transactions contemplated thereof, is in the best interests of the Debtors, their bankruptcy estates, creditors, and all parties in interest. The Sale must be approved and consummated promptly in order to maximize the value of the Debtors' estates.

V. Upon entry of this Order, the Debtors have all the limited liability company or organizational power and authority necessary to consummate the transactions contemplated by the Purchase Agreement.

W. Except as otherwise provided in this Order, no consents or approvals, other than this Order and those expressly provided for in the Purchase Agreement, are required for the Debtors to consummate the transactions contemplated by the Purchase Agreement.

X. The Debtors have demonstrated good, sound and sufficient business purpose and justification, and it is a reasonable exercise of their business judgment and in the best interests of

creditors, to (i) sell the Purchased Assets on the terms and conditions set forth in the Purchase Agreement; (ii) assume and assign the Assigned Contracts to the Purchaser; and (iii) consummate all transactions contemplated by the Purchase Agreement.

Y. The provisions of sections 363 and 365 of the Bankruptcy Code have been complied with and are applicable to the sale of the Purchased Assets.

Z. The Debtors may sell the Purchased Assets free and clear of all Liens of any kind or nature whatsoever other than as provided in the Purchase Agreement because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. All parties with Liens of any kind or nature whatsoever in the Purchased Assets who did not object to the Sale Motion and the relief requested therein, or who withdrew their objections to the transactions, are deemed to have consented pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code. All parties with Liens of any kind or nature whatsoever in the Purchased Assets, including all parties who objected to the Sale Motion and the relief requested therein, fall within one or more of the other subsections of sections 363(f) and 365 of the Bankruptcy Code and are adequately protected by having their Liens attach to the proceeds of the sale of the Purchased Assets that exceed the Purchase Price with the same validity, enforceability, priority, force and effect that such holder had prior to the sale of the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest.

AA. Except as otherwise provided in the Purchase Agreement, consummation of the transactions will not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the

8
DB02:9158727.5                                                                                           068913.1001

Debtors, any affiliate of the Debtors, or any other person by reason of such transfers and assignments, including, without limitation, based on any theory of antitrust or successor or transferee liability.

BB. To the extent that the Purchased Assets constitute all or substantially all of the assets of any of the Debtors, substantial and sufficient business exigencies and reasons exist that permit the Purchased Assets to be sold outside of the context of a chapter 11 plan of reorganization or liquidation.

CC. The Debtors and/or Purchaser have (i) cured, or have provided adequate assurance of prompt cure of, all defaults under the Assigned Contracts, if any, existing as of before the date of this Order, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation or adequate assurance of prompt compensation to any party for any actual pecuniary loss to such party resulting from a default under the Assigned Contracts as of the date of this Order, if any, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provided adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of sections 365(b)(1)(C) and 365(f)(2) of the Bankruptcy Code.

ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

<u>General Provisions</u>

1. The findings of fact entered above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

9

DB02:9158727.5    068913.1001

2. The Sale Motion is granted as set forth herein.

3. All parties in interest have had the opportunity to object to the relief requested in the Sale Motion and to the extent that objections to the Sale Motion or the relief requested therein have not been withdrawn, waived or settled, such objections and all reservations of rights included therein, are overruled on the merits. The parties who did not object, or who withdrew their objections to the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

### Approval of the Purchase Agreement

4. The Purchase Agreement and all of the terms and conditions contained therein are approved and are binding upon the parties thereto.

5. The approval by the Debtors of the sale of the Purchased Assets and the terms and conditions contemplated by the Purchase Agreement, including, without limitation, the closing of the transactions contemplated by the Purchase Agreement, are hereby approved pursuant to sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code.

6. The Debtors are authorized and directed, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to perform all of their obligations pursuant to the Purchase Agreement and to execute such other documents and take such other actions as are reasonably necessary to effectuate the transactions contemplated by the Purchase Agreement.

### DIP Facility Credit Bid Amount

7. The DIP Lender is a secured creditor of Debtors, holding valid liens, claims, interests and encumbrances in, on and against the DIP Facility Collateral pursuant to the Final Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363 And 364 And Rules 2002, 4001 And 9014 Of The Federal Rules Of Bankruptcy Procedure: (I) Authorizing Incurrence By The

10

DB02:9158727.5                                                                                                    068913.1001

Debtors Of Post-Petition Secured Indebtedness With Priority Over All Other Secured Indebtedness And With Administrative Super Priority; (II) Granting Liens; (III) Authorizing Use Of Cash Collateral By The Debtors Pursuant To 11 U.S.C. Section 363 And Providing For Adequate Protection; And (IV) Modifying The Automatic Stay (the "Final DIP Order"), and under which the DIP Lender holds an allowed secured claim, not subject to subordination and otherwise unavoidable for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, against the Debtors for principal, accrued interest and reimbursable fees and expenses as of the date of this Order in its credit bid amount up to the principal amount of $2,800,000 plus interest, fees and reasonable expenses accrued after the date of this Order and while the obligations under the DIP Facility remain outstanding or such lesser amount outstanding as of the date of closing (the "DIP Facility Payoff Amount").

Prepetition Senior Obligations Credit Bid Amount

8. The Prepetition Senior Lender is a secured creditor of Debtors, holding valid liens, claims, interests and encumbrances in, on and against the Prepetition Senior Collateral pursuant to the Prepetition Senior Loan Documents and the Final DIP Order, and under which the Prepetition Senior Lender holds an allowed secured claim, not subject to subordination and otherwise unavoidable for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, against the Debtors for principal, accrued interest and reimbursable fees and expenses as of the date of this Order in the credit bid amount of $65,000,000 less the DIP Facility Payoff Amount (the "Prepetition Senior Loan Obligations Payoff Amount").

Transfer of the Purchased Assets to the Purchaser

9. The sale of the Purchased Assets, pursuant to this Order and the Purchase Agreement, will vest the Purchaser with good title to the Purchased Assets and will be a legal,

valid and effective transfer of the Purchased Assets free and clear of all Liens, except as expressly permitted by the Purchase Agreement.

10. Except as expressly provided in the Purchase Agreement, pursuant to sections 105(a), 363(f), and 365 of the Bankruptcy Code, upon the Closing, the Purchased Assets shall be sold, transferred or otherwise conveyed to Purchaser free and clear of all Liens except as provided in the Purchase Agreement, with all such Liens to attach to the net proceeds of sale of the Purchased Assets that exceed the Purchase Price in the order of their priority, and with the same validity, priority, force and effect which such holder has prior to the sale of the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest.

11. All persons or entities holding Liens in, to or against the Purchased Assets shall be, and they hereby are, forever barred from asserting such Liens against Purchaser and its successors and assigns, or against such Purchased Assets after Closing.

12. Upon Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders asserting claims in respect of such Assumed Liabilities are forever barred from asserting such claims against the Debtors, their estates, and their successors and assigns.

## Assumption and Assignment of the Assigned Contracts

13. Subject to and conditioned on the Closing of the transactions contemplated in the Purchase Agreement, the Debtors are authorized pursuant to section 365(a) of the Bankruptcy Code to assume and assign the Assigned Contracts. Any objections to the assumption and assignment of any of the Assigned Contracts to the Purchaser are hereby overruled. Any objections to the Cure Amounts are resolved as set forth herein. To the extent that any

counterparty failed to timely object to its Cure Amount, such counterparty shall be deemed to have consented to such Cure Amount and the assumption and assignment of its respective Assigned Contract(s) to the Purchaser.

14. Subject to and conditioned on the Closing of the transactions contemplated in the Purchase Agreement, pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms contained in the Purchase Agreement, of the Assigned Contracts is approved, and the requirements of section 365(b)(l) of the Bankruptcy Code with respect thereto are deemed satisfied.

15. Upon Closing pursuant to the Purchase Agreement, the Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their terms, notwithstanding any provision in the Assigned Contracts (including, without limitation, those described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further obligation or liability for any breach of the Assigned Contracts occurring or arising after such assumption and assignment.

16. Any undertakings (payment and/or performance) necessary to cure defaults under such Assigned Contracts (the "Cure Amounts") shall be paid or undertaken by Purchaser. Except as set forth in the Purchase Agreement or in this Order, Purchaser has not agreed to pay, shall not be required to assume, and shall have no liability or obligation with respect to, any liability or obligation, direct or indirect, absolute or contingent, of Sellers.

17. The Cure Amount set forth in (i) the Cure Amount Notice, (ii) any stipulation entered into between the Debtors and/or Purchaser on the one hand and the non-debtor party to

an Assigned Contract on the other hand, or (iii) prior Order of this Court, shall be controlling notwithstanding anything to the contrary in any Assigned Contract or other document, and the non-debtor party to each Assigned Contract shall be forever barred from asserting against the Debtors or the Purchaser any other cure claim arising prior to the Closing.

18. To the extent that the contracts listed on listed on <u>Exhibit B-1</u>, attached hereto (the "<u>Additional Contracts</u>") are executory contracts which the Purchaser requests the Debtors to assume and assign to the Purchaser, within (2) two business days of the entry of this Order, the Debtors shall serve the counterparty to the Additional Contracts with a notice (the "Supplemental Cure Amount Notice") which shall: (i) identify the contract or agreement, (ii) provide the Debtors' asserted Cure Amount, and (iii) state the Debtors intent to assume and assign the contract as part of this Sale. Any objecting counterparty to the Additional Contract to the assumption and assignment of the contract must file an objection (the "Cure Amount/Assignment Objection") within twenty-one (21) days after the receipt of the Supplemental Cure Amount Notice (the "Cure Amount/Assignment Objection Deadline") and serve a copy on the Notice Parties, as defined in the Bidding Procedures Order, so as to be received by that time and date. A Cure Amount/Assignment Objection must: (a)identify the executory contract or unexpired lease to which the objector is party; (b) describe with particularity any cure the claimant contends is required under section365 of the Bankruptcy Code (the "Cure Claim") and identify the basis(es) of the alleged Cure Claim; and (c) attach all documents supporting or evidencing the Cure Claim or otherwise setting forth the grounds for objection to the proposed assumption and assignment. If no Cure Amount/Assignment Objection is timely and properly filed and served in accordance with this paragraph, the counterparties to the Additional Contracts shall be deem to have consented to the assumption and assignment of their contract or agreement and the Cure Amount

as set forth in this Order and the Supplemental Cure Amount Notice and the counterparty to the Additional Contract shall be forever barred from asserting any other claim arising prior to the assignment against the Debtors or the Purchaser. In the event of a timely Cure Amount/Assignment Objection is filed and served and cannot be resolved by the parties, said objection shall be heard by this Court on April 20, 2010 at 11:00 a.m. (ET), or some other date as mutually agreed upon by the parties in interest.

19. The failure of the Debtors or the Purchaser to enforce any term or condition of any Assigned Contract or Additional Contract shall not constitute a waiver of such term or condition or of the Debtors' or the Purchaser's rights to enforce every term and condition of the Assigned Contracts.

20. The Purchaser may elect to take assignment of certain executory contracts and leases listed on **Exhibit C** to the Purchase Agreement for up to thirty (30) days after the Closing Date of the Sale (the "Post-Closing Assumed Contracts"). Upon designation of such Post-Closing Assumed Contracts by the Purchaser, the Debtors shall file with the Court and serve a notice on the non-debtor counterparties to the Post-Closing Assumed Contracts that identifies the Purchaser of the Purchased Assets and provides notice that the Debtors are assuming and assigning the Post-Closing Assumed Contracts to the Purchaser.]

Miscellaneous Provisions

21. The Sale does not implicate the provisions of sections 363(b)(1)(A) or 363(b)(1)(B) of the Bankruptcy Code.

22. The consideration to be paid by the Purchaser for the Purchased Assets under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

23. This Order (a) is and shall be effective as a determination that, upon the Closing, except as expressly provided in the Purchase Agreement, all Liens existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated in each case as to the Purchased Assets and (b) shall authorize all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments (including, without limitation, copies of this Order) that reflect that the Purchaser is the assignee of the Purchased Assets free and clear of all Liens.

24. The provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Liens and the Excluded Liabilities shall be self-executing, and none of the Debtors, the DIP Lender, the Prepetition Senior Lender, the Prepetition Subordinated Creditor or the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

25. Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

26. Except with respect to enforcing the terms of the Purchase Agreement and/or this Order, absent a stay pending appeal, no person shall take any action to prevent, enjoin or

16
DB02:9158727.5    068913.1001

otherwise interfere with consummation of the transactions contemplated in or by the Purchase Agreement or this Order.

27. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court; *provided, however,* that any such modification, amendment or supplement is neither material nor changes the economic substance of the transactions contemplated hereby.

28. In the absence of a stay of the effectiveness of this Order, in the event that the Purchaser and the Debtors consummate the transactions contemplated by the Purchase Agreement at any time after entry of this Order, then with respect to the transactions approved and authorized herein, the Purchaser, as a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to all of the protections of section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

29. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement, including, without limitation, copies of this Order as evidence of the transactions authorized and contemplated hereby.

30. Until these cases are closed or dismissed, the Court shall retain exclusive jurisdiction (i) to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents and instruments executed therewith; (ii) to compel transfer of the Purchased Assets to

the Purchaser; (iii) to compel the Purchaser to perform all of its obligations under the Purchase Agreement; (iv) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement, including without limitation the adjudication of any cure required under Assigned Contracts; and (v) to interpret, implement and enforce the provisions of this Order.

31. This Order shall be binding upon (i) the Debtors and their estates, (ii) all creditors of, and holders of equity interests in, any Debtor, (iii) all holders of Liens against or on all or any portion of the Purchased Assets, (iv) the Purchaser, and all successors and assigns of any of the foregoing, including any trustees that may be appointed in any of the Debtors' bankruptcy cases. This Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

32. The failure to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that the Purchase Agreement be approved and authorized in its entirety.

33. Any conflict between the terms and provisions of this Order and the Purchase Agreement shall be resolved in favor of this Order.

34. The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Purchase Agreement prior to closing without further order of the Court.

35. This Order constitutes a final order pursuant to 28 U.S.C. § 158(a). As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately. The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for fourteen (14) days are hereby waived, and this Order shall be effective, and the parties may consummate the transactions contemplated by the Purchase Agreement immediately upon entry

of this Order. This Court has found that time is of the essence in closing the transaction and the parties to the Purchase Agreement shall be authorized to close the sale as soon as possible consistent with the terms of the Purchase Agreement.

Dated: Wilmington, Delaware
       March ___, 2010

_____
Kevin J. Carey
Chief United States Bankruptcy Judge

DB02:9158727.5    068913.1001