# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KLCG PROPERTY, LLC, and<br>GURNEE PROPERTY, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 09-14418 (KJC)<br><br>(Jointly Administered)<br><br>Hearing Date: November 3, 2010 at 3:00 p.m. (ET)<br>Objection Deadline: October 27, 2010 at 4:00 p.m. (ET) |

## DEBTORS' MOTION, PURSUANT TO SECTIONS 105(a), 305(a), 349 AND 1112(b) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER APPROVING (A) DISMISSAL OF THE DEBTORS' CHAPTER 11 CASES, (B) PROCEDURES FOR THE DISTRIBUTION OF ASSETS TO THE GENERAL UNSECURED CREDITORS AND (C) GRANTING CERTAIN RELATED RELIEF

KLCG Property, LLC ("KLCG Property") and Gurnee Property, LLC ("Gurnee-Property") (each a "Debtor" and collectively, the "Debtors") debtors-in-possession in the above-captioned chapter 11 cases hereby submit this motion (the "Motion") requesting the entry of an order, pursuant to sections 105(a), 305(a), 349 and 1112(b) of the Bankruptcy Code, (a) dismissing the Debtors' chapter 11 cases, (b) approving procedures for distribution of funds held for the benefit of unsecured creditors, and (c) granting certain related relief. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Joint Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of Debtors' federal tax identification numbers are: KLCG Property LLC (0521) and Gurnee Property, LLC (1995). The Debtors' address is 1700 Nations Drive, Gurnee, Illinois 60031.

2. The statutory bases for the relief requested herein are sections 105(a), 305(a), 349 and 1112(b) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 1017, 2002(m), and 2002(n).

## BACKGROUND

### A. THE CHAPTER 11 FILINGS

3. On December 16, 2009 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

4. Each Debtor continued to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, until the transfer of the Debtors' assets pursuant to an order entered by this Court.

5. On January 8, 2010, the United States Trustee for the District of Delaware (the "UST") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to Section 1102(a)(1) of the Bankruptcy Code. No trustee or examiner, other than a fee examiner, has been appointed in these cases.

6. A detailed description of the events leading up to this chapter 11 filing is set forth more fully in the Declaration of Steven A. Nerger in Support of Chapter 11 Petitions and First Day Motions [Docket No. 2] (the "Nerger Declaration"), filed in these cases on December 16, 2009 and incorporated herein by reference.

### B. THE DIP FACILITY

7. Dougherty Funding LLC (the "DIP Lender") was the lender under the Debtors' debtor in possession financing facility (the "DIP Facility") and a secured creditor of the Debtors, holding valid liens, claims, interests and encumbrances in, on and against post-petition collateral

(the "DIP Facility Collateral") pursuant to the *Final Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 Of The Federal Rules Of Bankruptcy Procedure: (I) Authorizing Incurrence By The Debtors Of Post-Petition Secured Indebtedness With Priority Over All Other Secured Indebtedness And With Administrative Super Priority; (II) Granting Liens; (III) Authorizing Use Of Cash Collateral By The Debtors Pursuant To 11 U.S.C. Section 363 And Providing For Adequate Protection; And (IV) Modifying The Automatic Stay* (the "Final DIP Order"). Under the Final DIP Order, the DIP Lender held an allowed secured claim, not subject to subordination and otherwise unavoidable for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, against the Debtors for principal, accrued interest, and reimbursable fees and expenses.

8. The DIP Facility was used for, among other things, funding the Debtors' post-petition business operations and the administrative costs of chapter 11, include a carve-out (the "Carve-Out") for the fees and expenses of professionals retained in the Chapter 11 Cases and the payment of quarterly statutory fees to the UST ("UST Fees").

C. **ASSET SALES AND ADMINISTRATION OF THE ESTATES**

9. On February 5, 2010, pursuant to Debtors' motion, the Court entered the *Order (A)(I) Establishing Bidding and Auction Procedures for the Sale of All or Substantially All of the Debtors' Assets; (II) Approving Bid Protections for the Stalking Horse Bidder; (III) Permitting Credit Bidding; (IV) Scheduling an Auction and Sale Hearing for the Sale of All or Substantially All of the Debtors' Assets; (V) Approving Notice Procedures for the Solicitation of Bids, an Auction and the Assumption and Assignment of Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; and (VI) Granting Related Relief* [Docket No. 136] (the "Bid Procedures Order"). The Bid Procedures Order approved a process for the marketing
3

and sale of substantially all of the Debtors' assets (the "Assets") and designated the DIP Lender or its successor(s), assignee(s) or designee(s) (the DIP Lender, when referred to in its capacity as purchaser of assets, shall be referred to as the "Purchaser"), as the stalking horse purchaser for the Assets.

10. On March 25, 2010, pursuant to the Debtors' motion, the Court entered an order approving the sale of the Assets to the Purchaser [Docket No. 200] which, *inter alia*, approved the Asset Purchase Agreement (the "Purchase Agreement") as entered into between the Debtors and Purchaser. Consideration for the Assets under the Purchase Agreement was a credit bid of the DIP Lenders' secured claim in the amount of $65,000,000. The Debtors and the Purchaser consummated a closing pursuant to the terms of the Purchase Agreement on September 1, 2010 (the "Closing Date").

11. Pursuant to the terms of the Purchase Agreement, the Purchased Assets (as defined therein) included all of the Debtors' assets, including the Real Property, Inventory, Accounts Receivable, Equipment and Fixtures, Books and Records, Avoidance Claims, Insurance, cash and Cash Equivalents, and General Intangibles, including but not limited to Assigned Contracts, Intellectual Property, Goodwill, reservations, deposits, rebates, refunds and prepaid amounts, Permits, Claims, warranties, marketing materials, software interests, and communication modes (all as defined more fully in the Purchase Agreement). The Purchaser has the right to direct and designate whether each of the Debtors' unexpired leases for nonresidential real property (the "Leases") and executory contracts (the "Executory Contracts") shall be assumed and assigned to the Purchaser. Any cure amounts for assumed and assigned Leases or Executory Contracts are to be paid by Purchaser.

## D. THE DEBTORS' REMAINING ASSETS

12. Pursuant to the terms of the Purchase Agreement, the Purchased Assets do not include (i) Executory Contracts or Leases that are not Assigned Contracts, (ii) the Debtors' rights in connection with the Purchase Agreement (including consideration payable to the Debtors), (iii) cash and cash equivalents to pay Approved Budget Expenses unpaid on or after the Closing Date, (v) the Carve-Out, and (v) any retainer described in the Final Order. The Debtors submit that the remaining assets cannot be liquidated by the Debtors or the Committee in a cost-effective manner that would realize value for the benefit of the Debtors' estates.

13. Pursuant to an agreement between the Committee, Debtors, and Purchaser, Purchaser paid into a trust account $195,000 ("Payment") for the benefit of the bankruptcy estate of KLCG Property, LLC and to be distributed pursuant to the priority provisions of the Bankruptcy Code and orders of this Court. The terms of the settlement whereby Purchaser agrees to the Payment are more specifically described below.

14. Based upon a review of schedules D, E, F and G of the Debtors' schedules of assets and liabilities filed with the Court on January 15, 2010 [Docket Nos. 87 & 89] (each a "Schedule" and, collectively, the "Schedules") and the proofs of claim filed in the Chapter 11 Cases, the Debtors conclude that no outstanding claims remain against Gurnee Property, LLC. The claims against the estate of KLCG Property, LLC are set forth on Exhibit A to the Dismissal and Claims Notice (as defined below).[2] The Debtors estimate that the outstanding allowed 503(b)(9) claims total approximately $3,135 and general unsecured claims to be allowed against the Debtor, KLCG Property, LLC are approximately $558,044 in amount.[3] Assuming these

---

[2] The Dismissal and Claims Notice is attached hereto as **Exhibit 2**. Exhibit A to the Dismissal and Claims Notice sets forth the claims which the Debtors believe remain outstanding against KLCG Property, LLC.

[3] These estimates are based on the allowed general unsecured claims listed on the attached Dismissal and Claims Notice, which excludes amounts on account of duplicate, contingent, unliquidated, or disputed claims as well

amounts are correct,[4] distribution of the $195,000 excluded from the Purchased Assets will allow a *pro rata* distribution of approximately 34% to general unsecured creditors. As the Debtors expect to remain administratively solvent and to be able to satisfy priority claims, substantially all of the Payment is available for the benefit of allowed general unsecured creditors and any remaining unpaid priority claims, to be paid pursuant to the provisions of the Bankruptcy Code, as itemized more fully in the Dismissal and Claims Notice attached hereto. The Debtors believe that most, if not all, priority claims other than the 503(b)(9) claims identified in the Dismissal and Claims Notice have been paid by Purchaser or put into trust to pay additional amounts to pay amounts to be incurred.

E. **THE PURCHASER'S PAYMENT**

15. The Debtors, the Committee, and the Purchaser have agreed, subject to this Court's approval, to the following: (i) the Purchaser's Payment of $195,000 paid at closing for the benefit of the bankruptcy estate of KLCG Property, LLC and its unsecured creditors, (ii) the procedure for making of distribution to holders of Allowed Claims (as defined below), and (iii) the dismissal of these Chapter 11 Cases.

16. The Debtors, the Committee, and the Purchaser have considered the benefit to the Debtors' estates and creditors that will be received as a result of this Payment, particularly in light of the costs, uncertainties, delay and risks of further litigation, and have concluded that this is fair and equitable and in the best interests of the Debtors, their estates, their creditors, and all other parties-in-interest.

---

as claims held by insiders, which are not receiving a distribution pursuant to the terms of the settlement between the Debtors, the Committee and the DIP Lenders discussed below.

[4] While the estimated amounts of Claims was determined by reviewing those claims that were either (a) the subject of a proof of claim or (b) listed in the schedules as undisputed, liquidated and non-contingent, other claims may exists. Accordingly, the Debtors' estimate of claims and the realization of distributions thereon remains subject to adjustment to the extent new claims are properly asserted prior to making the distribution contemplated by this Motion.

# RELIEF REQUESTED

17. By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a), 305(a), 349 and 1112(b) of the Bankruptcy Code, substantially in the form of the order annexed hereto as **Exhibit 1** (the "Dismissal Order") (a) dismissing the Chapter 11 Cases, (b) approving procedures for distribution of the Payment being held for the benefit of unsecured creditors, and (c) granting certain related relief.

A. **TERMS OF SETTLEMENT AND PAYMENT**

18. The salient terms and conditions of the settlement and Payment as agreed upon by the Purchaser, the Committee and the Debtors are as follows:

   (a) **Payment for the Benefit of Unsecured Creditors and Valid 503(b)(9) Claims to Debtors' Estates.** On the Closing Date, the Debtors' estates received the following consideration:

   i. The Purchaser made a Payment of $195,000 to the Debtors at closing. All distributions of these funds shall be subject, in all respects, to the terms, conditions and procedures set forth in the Dismissal Order, the provisions of the Bankruptcy Code and other orders entered in this matter.

   ii. The Purchaser agrees that it has no claim against either Debtor's estate.

   (b) **Funding for Claims Reconciliation Process.** The Purchaser agrees that the Debtors' counsel can use up to the full amount of their allocated portion of the Carve-Out, to reconcile claims made against the estates, distribute funds, and dismiss the Chapter 11 Cases. The Committee will continue to exist through dismissal, but only in an oversight capacity. Unused amounts under the Debtors' professionals' allocated portion of the Carve-Out, if any, will be an asset of the KLCG Property, LLC's estate and distributed with the Payment.

   (c) **Non-Insider Preference Actions.** The Purchaser has reviewed the list of payments made by the Debtors within 90 days of their respective bankruptcy filings as disclosed in their Statements of Financial Affairs filed with the Bankruptcy Court (the "90-Day Payments"). Although the Purchaser has purchased the Debtors' causes of action, including, among other things, causes of action under section 547 of the Bankruptcy Code, the Purchaser has reviewed the 90-Day Payments, does not believe it is cost effective or beneficial to attempt to avoid any of the 90-Day Payments under section 547 of the Bankruptcy Code, and will not pursue actions to recover the 90-Day Payments under section 547 of the Bankruptcy Code or otherwise.

YCST01:10245488.4    068913.1001

(d) **Committee Oversight.** Counsel for the Committee has reviewed this Motion and has no objection to the relief sought herein. Counsel for the Committee shall continue to monitor the claims process and the implementation of the terms set forth herein. To the extent Committee counsel's costs associated with documenting, monitoring, or otherwise ensuring that the settlement is implemented cause the total fees and expenses of the Committee professionals to exceed the amount of the Committee's professionals' allocated portion of the Carve-Out, such fees and expenses will be paid out of the Payment. Any unused amounts from Committee's professionals' allocated portion of the Carve-Out will be returned to the estates.

(e) **Committee Waiver.** The Committee agrees not to challenge the validity, priority, or the extent of Purchaser's liens. The Committee shall not pursue any causes of action against the Purchaser.

(f) **Funding of the Unused Portion of the Carve-Out.** At the Closing Date, Purchaser deposited into the trust account of von Briesen & Roper, s.c. an amount sufficient to fully fund amounts of the Carve-Out that had not been previously funded, including UST Fees.

(g) **Dismissal of Bankruptcy Cases.** An Order shall be entered dismissing the Debtors' Chapter 11 Cases, subject to distribution of the Payment and any other funds held by the Debtors' estates, funding of the professional fees, and payment of any then accrued and unpaid UST Fees, as provided for in the Dismissal Order.

B. **PAYMENT DISTRIBUTION PROCESS**

19. The Debtors seek approval of the following procedures (the "Distribution Procedures") for the distribution of the Payment to holders of claims as listed in the attached Dismissal and Claims Notice. Claims are segregated into columns titled "Allowed Priority Amount" and "Allowed General Unsecured Amount" (such amounts constituting the "Allowed Claims") to creditors holding valid 503(b)(9) claims and allowed unsecured claims against the estate of KLCG Property, LLC which process (described below) will permit a distribution of assets of Debtors' estates, including a *pro rata* distribution to the holders of allowed general unsecured claims as listed in the attached Dismissal and Claims Notice.

20. **Determination of Allowed Claims.** Consistent with the claims listed in Schedules of each of Debtors' Chapter 11 Cases, the proof of claims filed in Debtors' Chapter 11 Cases, and adjustments for circumstances noted in the column on the Dismissal and Claims

Notice titled, "Reason for Adjustment," the Debtors prepared the listing of claims set forth in the Dismissal and Claims Notice to identify the holders, amounts and priority of the Allowed Claims. The Debtors have also determined that certain claims should be "allowed" in the amount of $0.00 and/or not receive a distribution for the reasons more fully discussed below:

(a) Pursuant to an agreement with the Committee, claims of insiders will not share in the distribution. Any such claims are listed as $0.00 in the Allowed Priority Amount column and the Allowed General Unsecured Amount column. This lack of distribution and identification as $0.00 is not to be construed as an admission or waiver by any party, or determination by the Court, as to the actual amount of these claims.

(b) Creditors listed on Schedule F filed by KLCG Property, LLC identified as having an Amount of Claim of $0.00 with the notation, "For notice purposes only; not a creditor of this bankruptcy." are not included on Exhibit A to the Dismissal and Claims Notice and no Proof of Claim has been filed by any of these parties in this matter.

(c) Claims filed on behalf of Alexis Kunz as Claim numbers 25, 26, and 27 remain unliquidated, contingent, and disputed and are for $0.00. Accordingly, they are listed as $0.00 in the Allowed Priority Amount column and the Allowed General Unsecured Amount column. This lack of distribution and identification as $0.00 is not to be construed as an admission or waiver by any party, or determination by the Court, as to the actual amount of these claims. Any state court action regarding these claims shall not be affected by these bankruptcy proceedings or dismissals. Any state court action may proceed to judgment or settlement upon dismissal of these Chapter 11 Cases, or by a Court Order granting such relief. Nothing herein or in these Chapter 11 Cases shall affect Alexis Kunz's rights to applicable insurance coverage.

(d) Claims filed on behalf of Regina Blair as Claim numbers 11, 20, and 21 remain unliquidated, contingent, and disputed and are not made against either estate of Debtors. Accordingly, they are listed as $0.00 in the Allowed Priority Amount column and the Allowed General Unsecured Amount column. Additionally, Debtors assert that they were not Regina Blair's employer and have no liability on these claims.

(e) Pursuant to the Asset Purchase Agreement approved by this Court, Purchaser had the right to elect to take assignment of certain assumed executory contracts and leases. Purchaser made this election and Debtors filed with the Court and served a notice to all counterparties for which contracts were assumed and assigned. Purchaser must cure all arrears for all assumed and assigned contracts and leases. Pursuant to Purchaser's election and responsibility to cure all arrears, Debtors have listed on the Dismissal and Claims Notice all parties to assumed and assigned executory contracts and leases as holders of a claim of $0.00 in the Allowed Priority Amount column and the Allowed General Unsecured Amount column. All other executory contract and lease holders that were not assumed are listed as having a claim consistent with their claim that

existed as of the petition date, unless otherwise noted on the Dismissal and Claims Notice.

21. **Distribution and Reconciliation of Allowed Claims.** The Debtors propose to serve the notice attached hereto as Exhibit 2 (the "Dismissal and Claims Notice") on: (i) all persons and entities listed in Schedules D, E, F and G of the Debtors' schedules, (ii) all persons and entities who filed proofs of claim in the Chapter 11 Cases, (iii) all counterparties to executory contracts and unexpired nonresidential leases with the Debtors, and (iv) all taxing authorities and regulatory agencies with jurisdiction over the Debtors, (each such person or entity included in (i) – (iv), a "Potential Claimant"). The Dismissal and Claims Notice advises each Potential Claimant that the Debtors are seeking the relief set forth herein and that, if the Potential Claimant believes that its claim is not properly set forth in the Dismissal and Claim Notice, such party must file an objection (each an "Objection") by October 27, 2010 at 4:00 p.m. Eastern Time (the "Objection Deadline").

22. Any Objection that is timely filed by the Objection Deadline shall be heard at the hearing on the Motion, unless the Debtors are able to consensually resolve such Objection prior to the hearing on the Motion. Any claim set forth in an Objection for which (i) the Debtors agree is properly asserted, or (ii) is determined by the Court to be a claim properly asserted against the Debtors at the hearing on this Motion, shall be treated as an "Allowed Claim" for all purposes of this Motion, the Dismissal Order and the proposed distribution of the Payment and other estate assets. The Debtors hereby seek a determination from the Court that any Potential Claimant or other interested party that does not timely file an Objection to this motion be barred from challenging the proposed allowed amounts of the Allowed Priority Amount and the Allowed General Unsecured Amount as set forth in The Dismissal and Claims Notice.

23. In order to effectuate the foregoing proposed Distribution Procedure, the Debtors and Committee request that the Court waive, to the extent otherwise applicable, the requirements of Rule 3007 of the Federal Rules of Bankruptcy Procedure and Local Rule 3007-1 with regard to substantive claims objections and omnibus claims objections.

24. Within ten (10) business days after entry of the Dismissal Order, the Debtors shall cause a distribution for payment of unpaid claims pursuant to the provisions of the Bankruptcy Code and the Orders entered in these matters, a payment of the valid 503(b)(9) claims as identified in the Allowed Priority Amount column, and a *pro rata* distribution of the remaining amount of the Payment for those allowed amounts as listed in the column Allowed General Unsecured Amount Column in the attached Dismissal and Claims Notice. The Debtors also request authority to refrain from making any *de minimis* distribution that would result in a distribution of less then $25 to an Allowed Unsecured Claimant. In addition, the Debtors request that any distributed check(s) not claimed and/or cashed within 60 days after distribution of the check(s) (the "Check Cashing Period") be deemed void, the corresponding claim(s) shall be disallowed, and the remaining funds be paid over to this Court.

25. The Debtors also request that the Dismissal Order provide that, from and after the date of its entry, neither the Debtors, nor any of the Debtors' respective present or former directors, officers, employees, shareholders, partners, members, affiliated funds, attorneys, consultants, advisors and agents (in each case, acting in such capacities), shall have or incur any liability to any person for any act taken or omitted to be taken in good faith in connection with or related to the negotiation, formation, preparation, dissemination, implementation, confirmation or consummation of the Dismissal Order (other than an act in contravention of the Dismissal

YCST01:10245488.4                                                                      068913.1001

Order), or any contract, instrument, release or agreement or document created or entered into, or any other act taken or omitted to be taken in good faith in connection with the Dismissal Order.[5]

## APPLICABLE AUTHORITY

A. **APPROVAL OF DISTRIBUTION AND DISMISSAL PROCEDURES**

i. **Dismissal of These Cases Is Warranted Under Section 1112(b) of the Bankruptcy Code**

26. The Court should approve the Distribution and Dismissal Procedures because the Debtors (a) are unable to bear the administrative burden of effectuating a plan of reorganization, and (b) have no remaining meaningful estate assets to administer.

27. Since the inception of these Chapter 11 Cases, the Debtors, the Committee and the Purchaser have been negotiating over the rights and obligations of the Debtors and their estates vis-à-vis the posture of these Chapter 11 Cases. The entry of the Dismissal Order is the only way to avoid an unfortunate conversion of these Chapter 11 Cases to Chapter 7, in which creditors would (a) not be guaranteed a distribution equal to or greater than those provided for under the Dismissal Order, and (b) potentially be the targets of Avoidance Action prosecution by a Chapter 7 trustee, which the Debtors do not believe would yield meaningful (if any) recoveries to the Debtors' estates and creditors.

28. Additionally, authorizing the Debtors to effectuate the terms set forth herein is well within the equitable powers of this Court. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process or judgment that is necessary to carry out the provisions of [the Bankruptcy

---

[5] Such relief is consistent with what is provided under section 1125(e) to parties successfully bringing a chapter 11 case to its conclusion, *see* 11 U.S.C. § 1125(e); *In re PWS Holding Corp., s, Inc.*, 228 F.3d 224 (3d Cir. 2000), and court's have approved such relief in structured dismissals such as the one proposed by the Debtors' in these cases. *See In re CFM U.S. Corporation, et al.*, Case No. 08-10668 (KJC), Docket No. 1097 (Bankr. D. Del. June 30, 2009); *In re Wickes Holdings, LLC, et al.*, Case No. 08-10212 (KJC), Docket No. 1418 (Bankr. D. Del. May 11, 2009); *In re New Weathervane Retail Corp.*, 04-11649 (PJW), Docket No. 566 (Bankr. D. Del. Sept. 2, 2005).

Code]."); *see also Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (nothing that a bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

29. The Dismissal Order serves the paramount interest of the Debtors' creditors by resolving the remaining issues and controversies among the Debtors, the Committee, and the DIP Lender / Purchaser. As discussed above, only through these procedures will the Debtors be positioned to make substantial distributions to their remaining administrative creditors, while simultaneously providing them immediate finality that may not be achieved for a number of years if the Chapter 11 Cases are converted to cases under Chapter 7.

30. It is well settled that determinations concerning the payment of administrative expenses outside of a plan of reorganization are matters within the sound discretion of the bankruptcy court. *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002); see, e.g., *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1384 (11th Cir. 1994); *In re Verco Indus.*, 20 B.R. 664, 665 (B.A.P. 9th Cir. 1982); *In re Baptist Medical Center of New York, Inc.*, 52 B.R. 417, 421 (E.D.N.Y. 1985). One of the chief factors courts consider in making this determination is bankruptcy's goal of an orderly distribution among creditors and the need to prevent a race to the debtor's assets. *In re HQ Global Holdings, Inc.*, 282 B.R. at 173. For the reasons stated herein, the Debtors submit that authorization to make the proposed distributions outside of a plan of reorganization is justified and warranted under the circumstances of these cases.

31. Under section 1112(b) of the Bankruptcy Code, a court may dismiss a debtor's chapter 11 case "for cause." 11 U.S.C. § 1112(b); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999). Section 1112(b) of the Bankruptcy Code states, in pertinent part, "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." A determination of cause is made by the court on a case-by-case basis. *Albany Partners*, 749 F.2d at 674. In addition, the decision to dismiss a case is particularly delegated to the bankruptcy court's sound discretion. *See In re Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 1999 WL 587790, at *2 (Bankr. E.D. Pa. 1999) (citing *In re Atlas Supply Corp.*, 837 F.2d 1061, 1063 (5th Cir. 1988). Therefore, it is clear that the Court is authorized to dismiss the Debtors' Chapter 11 Cases upon a showing of "cause."

32. The legislative history of section 1112(b) of the Bankruptcy Code and relevant case authority indicate that a court has wide discretion to use its equitable powers to dispose of a debtor's case. H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 57878; *see also In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (stating that a court has broad discretion to dismiss a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (stating that a determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); *In re Koerner*, 800 F.2d 1358, 1367 & n.7 (5th

14

Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code); *Albany Partners*, 749 F.2d at 674 (same).

33. Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of 16 grounds for dismissal. 11 U.S.C. § 1112(b)(4)(A)-(P); *Frieouf v. U.S.*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is non-exhaustive); *In re Blunt*, 236 B.R. at 864 (same). One such ground is where a party-in-interest shows that there is an "inability to effectuate a plan [of reorganization]." 11 U.S.C. § 1112(b)(2)(A); *Preferred Door Co.*, 990 F.2d at 549; *Sullivan Cent. Plaza I*, 935 F.2d at 728. Here, the Court may dismiss the Debtors' Chapter 11 Cases because the Debtors are unable to effectuate a plan.

34. Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry one out" or where the "core" for a workable plan of reorganization "does not exist." *See Preferred Door*, 990 F.2d at 549 (quoting *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989)) (finding an inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or carry one out); *In re Blunt*, 236 B.R. at 865 (finding cause to dismiss debtor's case under section 1112(b)(2) of the Bankruptcy Code where "core" for a workable plan of reorganization found to be nonexistent).

35. Here, it is simply not possible for the Debtors' to confirm a Chapter 11 plan because the Debtors have liquidated all of their assets, have no unencumbered funds and cannot bear the cost of administrative expense claims to effectuate a plan of reorganization. All of the Debtors' assets have been sold and as such, there is no business to reorganize, and insufficient funds remain in the Debtors' estates to confirm a plan of liquidation. By continuing in bankruptcy, the Debtors would likely incur additional administrative expenses beyond their ability to pay taking what appears to be a certain, meaningful recovery to unsecured creditors and

15

turning that into what would likely be a return of zero dollars. In sum, the Debtors have met their burden of proof to show that cause exists to dismiss the Debtors' Chapter 11 Cases under section 1112(b) of the Bankruptcy Code due to their inability to effectuate a plan of reorganization.

36. Once a court determines that cause exists to dismiss a chapter 11 case, the court must also evaluate whether dismissal is in the best interests of the estate and creditors. *See In re Superior Sliding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994); *In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995), *aff'd* 200 B.R. 568 (E.D. Pa. 1996); *In re Warner*, 83 B.R. 807, 809 (Bankr. M.D. Fla. 1988). A variety of factors demonstrates that it is in the best interests of the Debtors' estates and creditors to dismiss these Chapter 11 Cases and authorize the Distribution and Dismissal Procedures sought herein.

37. A dismissal of the Debtors' Chapter 11 Cases meets the best interests of creditors' test where a debtor has nothing left to reorganize and the debtor's assets are fixed and liquidated. *See In re BTS, Inc.*, 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); *In re Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 799 (E.D. Pa. 2000) (finding that a reorganization to salvage a business which ceased doing business was not feasible); *In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and no reason to continue the reorganization). As noted above, the Debtors have nothing left to reorganize, as virtually all of the Debtors' assets have been liquidated. The only significant remaining task is for the parties to effectuate the Settlement and distribute the funds to the Debtors' remaining administrative creditors.

38. Additionally, dismissal of these Chapter 11 Cases is warranted because the alternative – conversion to Chapter 7 – would not serve the best interests of the Debtors' estates

and creditors for the reasons discussed above. One element of the best interests test focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. *In re Clark*, 1995 WL 495951, at 5 (N.D. Ill. 1995); *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993). The prime criterion for assessing the best interests of the estate is the maximization of value as an economic enterprise. *See id.* Here, the proposed Distribution and Dismissal Procedures will maximize the value of the Debtors' estates because conversion to chapter 7 would impose substantial and unnecessary additional administrative costs upon the Debtors' estates with no guarantee that these estates and creditors would receive more consideration than provided hereunder.

39. Numerous courts, both in this district and throughout the country, have approved structured dismissals under similar circumstances to the Debtors' where the debtor lacks the requisite financial ability to confirm a Chapter 11 plan and/or the costs associated with plan confirmation would eliminate the possibility of a meaningful creditor recovery. See, e.g., *In re CFM U.S. Corporation, et al.*, Case No. 08-10668 (KJC), Docket No. 1097 (Bankr. D. Del. 2009); *In re Wickes Holdings, LLC, et al.*, Case No. 08-10212 (KJC), Docket No. 1418 (Bankr. D. Del. 2009); *In re Bag Liquidation, Ltd*, Case No. 08-32096, Docket No. 688 (Bankr. N.D. Tex. 2009); *In re Levitz Home Furnishings, Inc.*, Case. No. 05-45189-brl, Docket No. 1167 (Bankr. S.D.N.Y. 2008); *In re Princeton Ski Shop, Inc., et al.*, Case No. 07-26206, Docket No. 546 (Bankr. D.N.J. 2008); *In re Harvey Elecs., Inc.*, Case No. 07-14051-alg, Docket No. 177 (Bankr. S.D.N.Y. 2008); *In re Dawahare's of Lexington, LLC*, Case No. 08-51381-jms, Docket No. 316 (Bankr. E.D. Ky 2008); *In re New Weathervane Retail Corp.*, 04-11649 (PJW), Docket No. 566 (Bankr. D. Del. 2005); *In re Blades Board & Skate, LLC*, Case No. 03-48818, Docket No. 126 (Bankr. D.N.J. 2004).

ii.   **Dismissal of These Cases Is Warranted Under Section 305(a)(1) of the Bankruptcy Code**

40.   Alternatively, cause exists to dismiss these Chapter 11 Cases pursuant to section 305(a) of the Bankruptcy Code, which provides, in pertinent part:

> (a)   The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1)   the interests of creditors and the debtor would be better served by such dismissal or suspension;

11 U.S.C. § 305(a).

41.   In applying section 305(a), courts have considered a wide range of factors, including, but not limited to:

> (i)     economy and efficiency of administration;
>
> (ii)    whether federal proceedings are necessary to reach a just and equitable solution;
>
> (iii)   whether there is an alternative means of achieving an equitable distribution of assets; and
>
> (iv)    whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves the interests in the case.

*See In re Crown Village Farm, LLC*, Case No. 09-11522 (KG), U.S. Bankr. LEXIS at *24 (Bankr. D. Del. June 12, 2009) (enumerating 305(a) factors and denying motion only because dismissal or abstention would have a deleterious effect on the administration of the debtor's chapter 11 case "which would languish while core issues were tried elsewhere"); *see also In re Mazzocone*, 200 B.R. 568, 575 (E.D. Pa. 1996). However, "the exact factors to be considered and the weight to be given to each of them are highly sensitive to the facts of each individual case." *Mazzocone*, 200 B.R. at 575.

42.   Dismissal of these cases is warranted under section 305(a)(1) for the same reasons that "cause" exists to dismiss these cases pursuant to section 1112(b) -- approval of the

Settlement and dismissal of the cases will effectuate an efficient administration of these estates and represent the least expensive and most equitable alternative for distribution of the Debtors' assets. Indeed, other courts have approved structured dismissals similar to that proposed by the instant Motion under section 305(a) of the Bankruptcy Code. See, e.g., *In re Scient, Inc., et al.*, Case No. 02-13455 (AJG), Docket No. 821 (Bankr. S.D.N.Y. 2006); *In re CSI, Inc., et al.*, Case No. 01-12923 (REG), Docket No. 284 (Bankr. S.D.N.Y. 2006).

43. The Distribution and Dismissal Procedures represent the parties' negotiated resolution of these Chapter 11 Cases. Authorizing the distributions contemplated herein and allowing the dismissal of these Chapter 11 Cases furthers the efficient administration of the Debtors' estates and the maximization of value for creditors.

## NOTICE

44. Notice and a copy of this Motion will be served upon: (i) the United States Trustee; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel to the Debtor's pre- and post-petition secured lenders; and (iv) parties that have requested service of papers pursuant to Bankruptcy Rule 2002. Additionally, a copy of the Dismissal and Claims Notice will be served on the Potential Creditors as set forth in Paragraph 21. The Debtors respectfully submit that no other or further notice is required.

## NO PRIOR REQUEST

45. No prior request for the relief sought in this Joint Motion has been made to this or any other Court.

**WHEREFORE**, the Debtors, with the Committee's approval, respectfully request that the Court enter an order (a) dismissing the Debtors' Chapter 11 cases, (b) approving procedures

for distribution of the Payment being held for the benefit of unsecured creditors, and (c) granting such further relief as the Court deems just and proper.

Dated: October 12, 2010
      Wilmington, Delaware

YOUNG CONAWAY STARGATT AND TAYLOR

_/s/ Ryan M. Bartley_

Michael R. Nestor (No. 3526)
Donald J. Bowman, Jr. (No. 4383)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

Randall D. Crocker (Wis. Bar No. 1000251)
Claire Ann Resop (Wis. Bar No. 1020942)
VON BRIESEN AND ROPER, S.C.
3 South Pinckney Street, Suite 1000
Madison, Wisconsin 53703-4200
Telephone: (608) 441-0300
Facsimile: (608) 441-0301

*Attorneys for the Debtors
and Debtors in Possession*

20

YCST01:10245488.4                            068913.1001